[No. A097460. First Dist., Div. Two. May 14, 2003.]

ROBERT M. LEVY, Plaintiff and Appellant, v.
SKYWALKER SOUND et al., Defendants and Respondents.

## COUNSEL

Towner Law Offices and Bruce M. Towner for Plaintiff and Appellant.

Littler Mendelson, Robert G. Hulteng and Sheila M. Kiernan for Defendants and Respondents.

## OPINION

**RUVOLO, J.**—Robert M. Levy appeals from a summary judgment in favor of his employer, Skywalker Sound, a limited liability corporation. We agree

with the trial court that the force of federal labor law is with Skywalker Sound, and that all of Levy's claims are preempted. We also conclude that the trial court's denial of Levy's motion to amend his complaint to conform to proof was not an abuse of discretion, and in any event did not prejudice Levy, because his proposed amendment would not have cured the preemption problem. Accordingly, we affirm.

## I.

### FACTUAL AND PROCEDURAL HISTORY

 ██ ██ Skywalker Sound operates an audio recording facility in Marin County, referred to by the parties as the scoring stage, that is primarily used by third parties to produce music CD's.[1] The scoring stage is also used a small portion of the time by Skywalker Sound's affiliated companies[2] to produce music for film soundtracks. Skywalker Sound also operates facilities other than the scoring stage that are used to produce film and video soundtracks.

Levy is an experienced audio recording engineer. In November 1995, Levy was asked to come to Skywalker Sound on a short-term, emergency basis to help out with the production of a third party music CD. Levy was living and working in Los Angeles at the time. While working on the short-term project, Levy was offered a full-time position at Skywalker Sound. He accepted the offer, and moved from Los Angeles to Marin County as a result. Levy was told that if he came to work for Skywalker Sound, he would be able to advance his career by pursuing his interest in mixing film soundtracks, an occupation in which he had no experience, but to which his existing audio engineering skills were related.

At least since 1987, Skywalker Sound has had a collective bargaining agreement (CBA) with Local No. 16 of the International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied

---

[1]When we review a decision granting summary judgment, "our account of the facts is presented in the light most favorable to the nonmoving party below, in this case plaintiff, and assumes that, for purposes of our analysis, [his] version of all disputed facts is the correct one. . . ." (*Birschtein v. New United Motor Manufacturing, Inc.* (2001) 92 Cal.App.4th 994, 999 [112 Cal.Rptr.2d 347], citing *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143].)

[2]Levy's complaint characterized Skywalker Sound as an independent corporation, and also named as defendants two other corporations, Lucas Digital Ltd. LLC, and Lucasfilm Ltd. All three defendants joined in the summary judgment motion, and it was granted as to all three. It appears that Skywalker Sound is actually not a separate corporate entity, but a division of Lucas Digital, which in turn is a subsidiary of Lucasfilm. In any event, neither party contends that the exact corporate relationship among the defendants has any bearing on the issues raised by this appeal. Accordingly, where appropriate, references in this opinion to Skywalker Sound include the other two defendants.

Crafts of the United States and Canada (I.A.T.S.E.) (the union) covering various specified classes of Skywalker Sound employees engaged in mixing sound for film and video. Before the spring of 1999, when the scope of the CBA was extended, it did not cover the music recording work done on the scoring stage.

When Levy was hired in 1995, he was told that the scoring stage was a "non-union room" and that his position would not be a union position. Levy concededly agreed to take the position on that basis. Starting in April 1996, however, Levy repeatedly expressed concern to various Skywalker Sound managers about the fact that he was not in the union.

In response, Levy was told that Skywalker Sound and the union had an agreement under which the scoring stage was nonunion. Levy contends that Skywalker Sound management told him (untruthfully) that the union agreement affirmatively *precluded* union members from doing any work on the scoring stage. Skywalker Sound contends, on the other hand, that Levy was merely told that *as a practical matter*, due to the time demands of his position on the scoring stage, he would not be able to continue with his music work if he joined the union in order to pursue his interest in learning film mixing. Levy did not raise this issue with the union, and did not take any action aimed at enabling him to join the union, such as seeking bargaining unit clarification from the NLRB (National Labor Relations Board).

Levy joined the union when the CBA was extended to cover the scoring stage in the spring of 1999. In November 1999, Dann Thompson, a recently hired union employee at the scoring stage, showed Levy a copy of a letter dated May 5, 1989, from the union's business representative to a union steward at an apparently unrelated company called Sprocket Systems (the May 1989 letter). Thompson had received the May 1989 letter from his and Levy's supervisor, Leslie Jones, who had discovered it in a file cabinet in her office during the fall of 1998. The May 1989 letter indicated that in order to encourage Skywalker Sound to use union members rather than outside people to work on third party music recording on the scoring stage, the union had agreed with Skywalker Sound's parent corporation that certain union benefits (night premiums, meal periods, meal penalties and rest periods) would not apply to union members while working on the scoring stage.

After Thompson showed Levy the May 1989 letter, Levy contacted the union and enlisted its support in approaching Skywalker Sound's management with a claim that he should have been permitted to join the union, and to have been paid union wages for his work on the scoring stage, from the outset of his employment at Skywalker Sound. When informal efforts to

resolve the dispute proved unsuccessful, Levy filed this action in Marin County Superior Court. He did not file a grievance or seek arbitration under the CBA, nor did he pursue any remedies that might have been available to him through the NLRB.

In the course of discovery in this litigation, Skywalker Sound's counsel produced two documents embodying formal, signed agreements between the union and Skywalker Sound that are not contained in the CBA. The first one, which is dated April 6, 1989, and entitled "LETTER OF UNDERSTAND-ING," appears to be the agreement that was described informally in the May 1989 letter. This agreement (the April 1989 Letter of Understanding) states at its outset that its purpose is to "clarify the meaning" of the CBA that became effective on January 1, 1987. Paragraph 5 of the April 1989 Letter of Understanding provides that "If any individuals employed within the classi-fication of Section 2(i) [of the CBA][3] perform music recording work (which is acknowledged to be outside the scope of the [CBA]), then the following provisions of the [CBA] shall not apply: Section 10 (night premium), Addendum Paragraph 7 (meal periods and meal penalties) and Addendum Paragraph 9 (rest period)." The document also includes four other numbered paragraphs setting forth agreements regarding the implementation of other provisions of the CBA. None of the other four paragraphs makes any reference to music recording or to the scoring stage.

The second agreement produced in discovery is dated April 4, 1996—about four months after Levy began working at Skywalker Sound—and is entitled "Skywalker Sound / Local 16—Sideletter of Understanding relating to the rental of the facilities to third parties." This document (the April 1996 Sideletter) was drafted and signed by Jim Morris, the president of Skywalker Sound's parent company, and countersigned on behalf of the union by Rod McLeod, its business manager and secretary.

The April 1996 Sideletter begins by acknowledging that the union "has in the past agreed to significantly modify the terms and conditions under which Skywalker Sound's employees could work in certain specified circum-stances" due to the company's poor financial condition. It goes on to state that its purpose is to confirm the union's agreement (1) to continue to negotiate in good faith on concessions requested by Skywalker Sound regarding the terms and conditions of its employees' work for Skywalker

---

[3]During the litigation, neither party was able to obtain a copy of the version of the CBA that was in effect in 1989. It is therefore not possible to determine what employees fell within the classification referred to in the April 1989 Letter of Understanding. For the purpose of this appeal, we assume, as the parties appear to have done, that such employees would have performed essentially the same functions on the scoring stage as Levy.

Sound's affiliates, and (2) to "[p]ermit Skywalker [Sound] to rent the facility and the equipment therein to unaffiliated third parties from time to time, it being agreed that the [CBA] shall not apply with respect to the rented facility and equipment or to any persons employed by the third party(ies) to work in the facility or operate the equipment, but it being understood that the [CBA] will apply with respect to any of [Skywalker Sound's] employees who are scheduled by Skywalker to work in the rented facility or to operate the rented equipment." In using the terms "the facilities," "the facility," and "the rented facility," the April 1996 Sideletter does not explicitly distinguish between the scoring stage and Skywalker Sound's film mixing area.

As of January 5, 2001, when Levy filed his first amended complaint in this action,[4] Levy did not have a copy of either the April 1989 Letter of Understanding or the April 1996 Sideletter.[5] Lacking these documents, Levy premised his allegations regarding his right to union membership and wages on the May 5, 1989 letter, which was referred to in the complaint as the "Scoring Stage Letter Agreement" or "SSLA" and attached to it as an exhibit.

Levy's complaint pled nine causes of action, which may be summarized as follows: (1) Skywalker Sound's failure to provide Levy with union wages and benefits was a breach of the SSLA, a contract of which Levy was a third party beneficiary; (2) Skywalker Sound's failure to pay Levy union wages and benefits as required by the SSLA was a violation of Labor Code sections 204, 222, and 223, for which Levy was entitled to sue under Labor Code section 218; (3) Skywalker Sound violated Labor Code section 970 by misrepresenting the nature of Levy's employment in order to induce him to move from Los Angeles to Marin County; (4) Skywalker Sound made fraudulent misrepresentations to Levy to induce him to become employed by it and to continue to provide services; (5) Skywalker Sound breached the covenant of good faith and fairly dealing implied in its employment contract with Levy by failing to disclose the terms and conditions they had agreed would govern Levy's employment; (6) and (7) Skywalker Sound intentionally (sixth cause of action) or negligently (seventh cause of action) misrepresented to Levy that under its agreement with the union, Levy was not eligible to become a union member; (8) and (9) Skywalker Sound's conduct constituted intentional (eighth cause of action) or negligent (ninth cause of action) infliction of emotional distress.

[4]All further references to Levy's complaint are to his first amended complaint, which was the operative pleading at the time Skywalker Sound filed its summary judgment motion.

[5]Skywalker Sound's counsel produced the April 1996 Sideletter in April 2001, during the course of discovery. They did not produce the April 1989 Letter of Understanding until late July 2001, shortly before Skywalker Sound filed its motion for summary judgment.

On August 14, 2001, Skywalker Sound filed a motion for summary judgment, or in the alternative for summary adjudication. In his papers in opposition to the motion, Levy sought leave to amend his complaint to conform to proof by referencing the April 1996 Sideletter. Levy did not file a formal, separately noticed motion for leave to amend, however, nor did he request that the summary judgment hearing be continued in order to give him an opportunity to file such a motion.

The trial court granted Skywalker Sound's motion for summary judgment on the ground that all of Levy's causes of action are preempted by federal labor law under section 301 of the federal Labor Management Relations Act, 1947 (29 U.S.C. § 185) (LMRA).[6] The court also held that Levy's suit was barred because he had not exhausted his grievance remedies under the CBA, and because his claims were subject to the arbitration provisions of the CBA.

■■■■ The trial court denied Levy's motion to amend to conform to proof on several independent grounds: (1) Levy's request for leave to amend was not supported by a memorandum of points and authorities, in violation of California Rules of Court, rule 312(a); (2) although the April 1996 Sideletter was not produced until July 2001, Levy had not requested a continuance under Code of Civil Procedure section 437c, subdivision (h); (3) Levy had not explained why he waited to request leave to amend until he filed his opposition to the summary judgment motion on September 18, 2001; and (4) because the April 1996 Sideletter was part of the CBA, referencing it in the complaint would not enable Levy to "amend his way around" the preemption problem. Levy timely appealed from the court's order granting summary judgment.[7]

---

[6]Section 301(a) of the LMRA (section 301) provides that "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in [the LMRA] . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." Levy does not contest section 301's obvious applicability to contracts between Skywalker Sound and the union; rather, as discussed below, his position is that his claims neither arise from, nor require interpretation of, such a contract.

[7]As numerous published appellate opinions have pointed out, an order granting summary judgment is not an appealable order. (E.g., *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 680 [68 Cal.Rptr.2d 228]; *Stolz v. Wong Communications Limited Partnership* (1994) 25 Cal.App.4th 1811, 1816 [31 Cal.Rptr.2d 229]; *Islander Yachts, Inc. v. One Freeport 36-Foot Vessel* (1985) 173 Cal.App.3d 1081, 1086, fn. 6 [219 Cal.Rptr. 654].) The appeal must be taken, instead, from a judgment entered on the basis of the summary judgment order. (See Code Civ. Proc., § 904.1, subd. (a)(1); see also 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 103, pp. 166-167; *id.*, § 119, p. 183.) In the present case, despite the trial court's direction in the summary judgment order that "judgment shall be entered forthwith," no judgment appears in the record. Skywalker Sound has not moved to dismiss the appeal, however. In the interests of justice and to avoid delay, we construe the order granting

## II.

### FEDERAL LABOR LAW PREEMPTION

 In ruling that Levy's claims are preempted by the NLRA, the trial court relied on a long line of United States Supreme Court cases holding that under section 301, although state courts have concurrent jurisdiction over controversies involving agreements between unions and employers, the substantive law governing union-management labor relations is exclusively federal, and the interpretation of collective bargaining agreements is exclusively a matter for arbitration under federal law. (*Steelworkers v. Rawson* (1990) 495 U.S. 362, 368 [110 S.Ct. 1904, 1909, 109 L.Ed.2d 362]; *Avco Corp. v. Aero Lodge 735* (1968) 390 U.S. 557, 560 [88 S.Ct. 1235, 1237, 20 L.Ed.2d 126]; *Lingle v. Norge Division of Magic Chef, Inc.* (1988) 486 U.S. 399, 411 [108 S.Ct. 1877, 1884, 100 L.Ed.2d 410]; *Allis-Chalmers Corp. v. Lueck* (1985) 471 U.S. 202, 220 [105 S.Ct. 1904, 1915-1916, 85 L.Ed.2d 206]; see also *Teamsters Local v. Lucas Flour Co.* (1962) 369 U.S. 95, 103-104 [82 S.Ct. 571, 576-577, 7 L.Ed.2d 593]; *Textile Workers v. Lincoln Mills* (1957) 353 U.S. 448, 456-457 [77 S.Ct. 912, 917-918, 1 L.Ed.2d 972].) On appeal, Levy contends that the trial court misapplied section 301 preemption law in granting summary judgment against him.

 ██ ██ The Ninth Circuit,[8] sitting en banc, recently summarized section 301 preemption law as follows. ██ "If the plaintiff's claim cannot be resolved without interpreting the applicable CBA . . . it is preempted. . . . [T]he need to interpret the CBA must inhere in the nature of

summary judgment as incorporating an appealable judgment, and the notice of appeal as appealing from such judgment. (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 924, fn. 7 [68 Cal.Rptr.2d 571]; *Slater v. Lawyers' Mutual Ins. Co.* (1991) 227 Cal.App.3d 1415, 1418, fn. 1 [278 Cal.Rptr. 479]; see Cal. Rules of Court, rule 1(a)(2) [notice of appeal must be liberally construed].)

[8]We note in passing that Skywalker Sound incorrectly characterizes decisions of the Ninth Circuit as "binding" on us, and decisions of the Third and Eighth Circuits as "non-binding." Before us, decisions of the lower federal courts on questions of federal law are persuasive, and entitled to great weight, but are not binding precedent, especially when the law on a particular question is not well settled. (See, e.g., *Wagner v. Apex Marine Ship Management Corp.* (2000) 83 Cal.App.4th 1444, 1451 [100 Cal.Rptr.2d 533]; *Yee v. City of Escondido* (1990) 224 Cal.App.3d 1349, 1351 [274 Cal.Rptr. 551], affd. (1992) 503 U.S. 519 [112 S.Ct. 1522, 118 L.Ed.2d 153]; cf. *Conrad v. Bank of America* (1996) 45 Cal.App.4th 133, 150 [53 Cal.Rptr.2d 336] [deference required where decisions on federal law are numerous and consistent]; see generally 9 Witkin, Cal. Procedure, *supra*, Appeal, § 942, pp. 983-984.) On some issues discussed in the briefs in this case, there is a split in the federal circuits, and no controlling authority from either the United States Supreme Court or the California Supreme Court. In that situation, decisions of the Ninth Circuit are entitled to no greater weight before the California appellate courts than those of any other circuit. (*Forsyth v. Jones* (1997) 57 Cal.App.4th 776, 782-783 [67 Cal.Rptr.2d 357]; *Alicia T. v. County of Los Angeles* (1990) 222 Cal.App.3d 869, 879 [271 Cal.Rptr. 513].)

the plaintiff's claim," however, in order for preemption to apply. (*Cramer v. Consolidated Freightways, Inc.* (9th Cir. 2001) 255 F.3d 683, 691.) "[I]f the claim may be litigated without reference to the rights and duties established in a CBA . . . [and] is plainly based on state law," it is not preempted, even if "the defendant refers to the CBA in mounting a defense." (*Ibid.*) Thus, the "touchstone" for section 301 preemption analysis is the nature of the plaintiff's underlying claim. (255 F.3d at p. 691.) Accordingly, to facilitate our analysis in this case, we have grouped Levy's claims into three categories.

## A.

### Contract Claims

Stressing that he was not a member of the union during the time period covered by his complaint, Levy argues that his contract claims[9] are not preempted because they are based not on the CBA, but on the April 1989 Letter of Understanding and the April 1996 Sideletter (the side letters). Levy characterizes the side letters as "individual employment agreements" that are independent of the CBA, and therefore not subject to federal labor law preemption. Skywalker Sound, on the other hand, contends that the side letters were "part and parcel" of the CBA, noting that by their very terms, the side letters constituted agreements between Skywalker Sound and the union regarding the interpretation and application of the CBA. Levy has cited no case holding that the scope of federal preemption under section 301 depends on whether the labor-management agreement involved in the case is labeled a "collective bargaining agreement" as opposed to a "side letter" or other such document. In any event, both of the side letters involved in this case explicitly reference the CBA, and express an intent to clarify and/or modify its terms. Under the circumstances, it is clear to us that the side letters cannot be distinguished from the CBA itself for the purpose of section 301 preemption analysis.

In support of his contention that his contract claims are not preempted because they are based on "individual employment agreements," Levy cites *Caterpillar Inc. v. Williams* (1987) 482 U.S. 386 [107 S.Ct. 2425, 96 L.Ed.2d 318]. *Caterpillar* involved claims that the defendant employer had made representations to the individual worker plaintiffs, at a time when they were not members of the union, which amounted to implied contracts guaranteeing them job security. (*Id.* at pp. 388-389 [107 S.Ct. at pp. 2427-2428].) The

---

[9]Levy's complaint alleged both a third party beneficiary claim (first cause of action) and a claim for breach of the covenant of good faith and fair dealing (fifth cause of action), both of which were premised on the contention that under the scoring stage letter agreement, he was entitled to the wages and at least some of the benefits owed to union members under the terms of the CBA.

complaint did not plead the breach of any agreement entered into between the company and the *union*, as opposed to between the company and the *individual workers*. The Supreme Court held that these claims were not preempted under section 301, and thus did not present any federal question for the purpose of removal to federal court, because they were "not substantially dependent upon interpretation of the collective-bargaining agreement"; did "not rely upon the collective [bargaining] agreement indirectly"; did not assert any "relationship between the individual contracts and the collective [bargaining] agreement"; and relied entirely on "agreements in which the collective-bargaining agreement played no part." (*Id.* at p. 395 & fn. 9 [107 S.Ct. at p. 2431].)

In the present case, by contrast, Levy's contract claims seek to enforce an agreement between Skywalker Sound *and the union*, not one between Skywalker Sound and *Levy individually*, independent of any agreement with the union. Whether this agreement is part of the CBA, or a separate agreement, is beside the point. *Caterpillar* is distinguishable because it did not involve *any* agreement between the employer and the union, whether or not explicitly labeled as a CBA.

Levy also relies on *Wanland v. Los Gatos Lodge, Inc.* (1991) 230 Cal.App.3d 1507 [281 Cal.Rptr. 890]. In *Wanland,* a union member previously covered by a CBA was promoted to a nonunion management position. The employer, believing the plaintiff still to be a union member, requested that she resign from the union, but she declined. Thereafter, for unrelated reasons, the employee was terminated from the position to which she had been promoted. She sued the employer for breach of her employment contract and breach of the implied covenant of good faith and fair dealing, alleging that her termination violated the employer's policy that nonunion employees would only be terminated for just cause. On appeal from a judgment in the employee's favor, the employer argued that the contract claims were preempted because the employee was still a union member, and was covered by a CBA provision precluding termination without just cause.

The appellate court concluded that the plaintiff's claims were not preempted by section 301. In affirming, the court noted that the managerial position to which the plaintiff had been promoted was a supervisory, nonunion position, and therefore, interpretation of rights under the CBA was unnecessary to resolve the litigated issues. Making a threshold determination that the new position to which the plaintiff had been promoted was not a union position did not, without more, require the type of inquiry into the CBA that provokes preemption. (*Wanland v. Los Gatos Lodge, Inc., supra,* 230 Cal.App.3d at pp. 1515-1517.) "The goal of consistency and uniformity

in federal labor law is in no way frustrated by affording remedies under state law to one who is not entitled to invoke the grievance procedures of a CBA." (*Id.* at p. 1517.)

We find *Wanland* distinguishable because, in that case, the issue in relationship to the CBA was simply whether the plaintiff's job fell outside the union contract. Therefore, the claims did not require interpretation of the CBA. In the present case, on the other hand, plaintiff claims he was entitled to union membership and, because he was told he was not eligible for union membership, he lost benefits, including access to jobs in film mixing, that were afforded to other union members. Thus, Levy's complaint expressly rests on the allegation that he should have been covered by the CBA, and is entitled to certain of its benefits under the side letters.

*Anderson v. Ford Motor Co.* (8th Cir. 1986) 803 F.2d 953 is also distinguishable. The complaint in *Anderson* alleged that the defendant employer had promised the individual employee the plaintiffs that they were being hired on a permanent basis. In fact, the employer was obligated under a CBA to give hiring preference to other workers, and found it necessary to lay off the plaintiffs in order to comply with the CBA. The court held that the employer could not rely on its duties under the CBA, which conflicted with the promises it had made directly to the plaintiffs, as a defense to their state law breach of contract claims. (*Id.* at p. 958, citing *Belknap, Inc. v. Hale* (1983) 463 U.S. 491 [103 S.Ct. 3172, 77 L.Ed.2d 798].) Thus, the court found no preemption, noting that the plaintiffs' breach of contract claims "d[id] not originate in, nor refer in any substantial way to, the rights and duties established in the collective bargaining agreement" between the company and the union. (803 F.2d at p. 958.) Here, by contrast, it is Levy, not Skywalker Sound, who is seeking to obtain the benefits of the CBA and the side letters.[10]

Levy also cites *Niehaus v. Greyhound Lines, Inc.* (9th Cir. 1999) 173 F.3d 1207, which held that section 301 preemption did not apply to an individual employee's claim against a union for breach of an agreement between the individual and the union that was separate and apart from the CBA between the union and the employer. In *Niehaus*, as here, the employee was not a member of the union at the time his claims arose. (*Id.* at p. 1209.) *Niehaus* is distinguishable for much the same reason as the cases discussed above, however, because the employee expressly disclaimed any reliance on any rights under the CBA, and did not allege or rely on any other agreement

---

[10]*Berda v. CBS Inc.* (3d Cir. 1989) 881 F.2d 20 involved much the same fact pattern as *Anderson*, and is distinguishable on the same basis.

between the union and the employer, as opposed to between the union and himself as an individual. (See *id.* at pp. 1211-1212.) This disclaimer, rather than the employee's nonmembership in the union, was the basis on which the court found preemption inapplicable.

In this case, far from disclaiming any rights under an agreement between the union and Skywalker Sound, Levy expressly seeks to bring himself within its scope. Thus, Levy's contract claims inherently rely on labor-management agreements, and thus are preempted under section 301.

## B.

### Tract Claims

Levy's tort claims[11] are all premised directly or indirectly on the allegation that Skywalker Sound made misrepresentations to him regarding his inability to join the union, and/or to receive union-level pay and benefits, while continuing to work on the scoring stage. Levy contends that because these misrepresentations were made before he became a union member, his claims are not subject to section 301 preemption.

Once again we find the cases relied on by Levy in this regard to be distinguishable. In *Anderson v. Ford Motor Co., supra,* 803 F.2d 953, for example, the critical factor that made preemption inapplicable to the plaintiffs' tort claims for fraudulent misrepresentation was not that the alleged misrepresentations were made at a time when the plaintiffs were not yet employees of the defendant. Rather, the court held that the claims were not subject to preemption because their adjudication would not "require[] any significant reference to the terms of the collective bargaining agreement." (*Id.* at p. 959; see also *Trans Penn Wax Corp. v. McCandless* (3d Cir. 1995) 50 F.3d 217; *Berda v. CBS Inc., supra,* 881 F.2d 20.)

Other cases holding state law tort claims not preempted under section 301 are distinguishable on the same basis. In *Lingle v. Norge Division of Magic Chef, Inc., supra,* 486 U.S. 399, for example, the plaintiff employee alleged that she had been fired for filing a worker's compensation claim, and pleaded a state law tort claim for retaliatory discharge. The United States Supreme Court held that the claim was not preempted by section 301, even though the worker was covered by a CBA that precluded discharge without

---

[11]Levy's complaint alleged fraud and deceit (fourth cause of action), intentional and negligent misrepresentation (sixth and seventh causes of action), and intentional and negligent infliction of emotional distress (eighth and ninth causes of action).

good cause, and even though the worker had pursued a union grievance on that basis. The court reached this conclusion because the factual elements of the claim pertained only to "the conduct of the employee and the conduct and motivation of the employer," neither of which "requires a court to interpret any term of a collective-bargaining agreement." (*Id.* at p. 407 [108 S.Ct. at p. 1882].)

Similarly, in *Niehaus v. Greyhound Lines, Inc., supra,* 173 F.3d 1207, the Ninth Circuit held that a former union member's tort claims against his union for fraud and negligent misrepresentation were not preempted under section 301. (173 F.3d at p. 1212.) The claims were based on a union official's alleged misrepresentations to the employee that he would be able to rejoin the union if he left a management position to which he had been promoted. Because none of the terms of the applicable CBA were disputed, deciding whether the employee acted reasonably in relying on the official's statements would not require an interpretation of the CBA. Thus, the court held that these claims were not preempted. (Accord, *Beals v. Kiewit Pacific Co., Inc.* (9th Cir. 1997) 114 F.3d 892 [negligent misrepresentation claim against employer not preempted where assessing reasonableness of employee's reliance on employer's misrepresentations did not involve any interpretation of CBA, the terms of which were not disputed].)

In this case, on the other hand, the resolution of Levy's tort claims would necessarily involve determining the truth or falsity of Skywalker Sound's statements that Levy could not join the union and continue to work on the scoring stage.[12] This, in turn, would require the court to determine what, if anything, is provided in the side letters as regards union membership in relation to the scoring stage. In such circumstances, section 301 preemption applies. Where the "[r]esolution of . . . state tort claims is . . . 'substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract,' " the claims are preempted under section 301. (*Bale v. General Telephone Co. of California* (9th Cir. 1986) 795 F.2d 775, 780, quoting *Allis-Chalmers Corp. v. Lueck, supra,* 471 U.S. at p. 220 [105 S.Ct. at pp. 1915-1916].)

---

[12]Because Levy's infliction of emotional distress claims are based on the same conduct as his fraud and misrepresentation claims, they are likewise subject to preemption on the same grounds. (Cf. *Young v Anthony's Fish Grottos, Inc.* (9th Cir. 1987) 830 F.2d 993, 1002 ["Young's complaint alleges intentional and negligent infliction of emotional distress due to her discharge. The claims arise out of the same conduct which formed the basis of her contract claim. As resolution of the claims is inextricably intertwined with the interpretation of the CBA, they are preempted. [Citations.]"])

## C.

### *Statutory Claims*

█ Levy's complaint includes two causes of action based on provisions of the California Labor Code: a claim for unpaid wages under Labor Code sections 204, 218, 222, and 223[13] (second cause of action), and a claim that Skywalker Sound breached its statutory duty under Labor Code section 970[14] by misrepresenting the nature of the employment it was offering to Levy in order to induce him to move from Los Angeles to Marin County (third cause of action). As Levy points out, claims based on employee rights created by state statutes have been found not to be preempted in several cases, including *Livadas v. Bradshaw* (1994) 512 U.S. 107 [114 S.Ct. 2068, 129 L.Ed.2d 93] and *Cramer v. Consolidated Freightways, Inc., supra,* 255 F.3d 683. However, those cases involved statutory claims that did not "necessarily require[] the court to interpret an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute." (*Cramer v. Consolidated Freightways, Inc., supra,* 255 F.3d at p. 693.)

*Cramer* itself, for example, involved a California statute (Pen. Code, § 653n) that prohibits the use of two-way mirrors to observe restrooms. Based on the statute, employees of a trucking company sued their employer for violating their privacy by installing video monitoring equipment behind two-way mirrors in employee restrooms. The court held that the claim was not preempted, because the employees' claim could be adjudicated without reference to the CBA, which did not address, and legally could not have permitted, the surreptitious surveillance alleged in the complaint. (*Cramer v. Consolidated Freightways, supra,* 255 F.3d at pp. 693-697.)

Levy's statutory claims, on the other hand, cannot be adjudicated without determining the meaning of the CBA and/or the side letters. Levy's claim for unpaid wages rests entirely on his claim that the scoring stage letter agreement entitled him to wages at the level set by the CBA. He does not allege

---

[13]As relevant to this case, Labor Code section 204 provides that wages must be paid within specified periods after they are earned; section 222 makes it unlawful to withhold any portion of wages due under a CBA willfully, unlawfully, or with the intent to defraud; section 223 makes it unlawful for an employer secretly to pay a wage lower than that required by a contract or statute; and section 218 permits wage claimants to sue for wages due them under the foregoing sections.

[14]As relevant to this case, Labor Code section 970 provides that "No person, or agent or officer thereof, directly or indirectly, shall influence, persuade, or engage any person to change from one place to another in this State . . . for the purpose of working in any branch of labor, through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, concerning either: [¶] (a) The kind, character, or existence of such work [or] [¶] (b) The length of time such work will last, or the compensation therefor . . . ."

that Skywalker Sound violated any other contractual, statutory, or regulatory obligation regarding the amount of his wages or the timeliness of their payment. Whether Levy was in fact entitled to receive wages at the union rate, however, is a question that cannot be resolved without determining whether employees like Levy, who were not required to join the union because they worked exclusively on the scoring stage, and who had not in fact joined the union, were nonetheless entitled to union level wages. Such a determination would inherently require an interpretation of the side letters between Skywalker Sound and the union, and thus places Levy's wage claim squarely within the scope of section 301 preemption.

The fact that Levy's claim to union wages requires an interpretation of a union-management agreement, and not merely a straightforward reference to a CBA that unquestionably covers him, sharply distinguishes this case not only from *Cramer* but also from *Livadas v. Bradshaw, supra*, 512 U.S. 107. In *Livadas*, the worker was a union member who was unquestionably covered by a CBA between her union and her employer, and there was no dispute concerning the amount of wages she was owed under the CBA, which, in fact, had already been paid. The worker's only state law claim was for a penalty due to the employer's failure to pay the undisputed wages promptly upon her discharge. The computation of the penalty amount rested entirely on the statute, and had nothing to do with the terms of the CBA. (*Id.* at pp. 124-125 [114 S.Ct. at pp. 2078-2079].) Under those circumstances, the United States Supreme Court held that the California Labor Commissioner could not refuse to enforce the late payment penalty merely because the worker was covered by a CBA.

Levy's cause of action under Labor Code section 970 also requires interpretation of the CBA and the side letters. Levy contends that Skywalker Sound induced him to move from Los Angeles to Marin County by promising him opportunities to expand his skills and advance his career by working in film as well as music production. After Levy began working at Skywalker Sound, he contends he was told that, contrary to what he had been told earlier, he could not in fact work in the film area, because in order to do so, he would have to join the union, and under an agreement with the union, union membership would preclude Levy from working on the music scoring stage, which was a nonunion facility.

If Levy's version of the facts is accepted,[15] Skywalker Sound's representations to him were mutually inconsistent, so some of them must have been

---

[15]In his opposition to Skywalker Sound's summary judgment motion, Levy introduced evidence supporting his version of the facts that was sufficient to create a triable issue. For the purpose of determining whether summary judgment was properly granted as a matter of

false. But which of the representations were false—those made before Levy moved to Marin, or those made after he had already done so—depends on whether the CBA and/or the side letters in fact precluded Levy from working in the film area if he did not join the union, and precluded him from working on the music scoring stage if he did. Moreover, if Levy were entitled to relief under Labor Code section 970, the measure of damages under Labor Code section 972 would depend on whether or not Levy was entitled to union level wages, a question that also depends on interpreting the side letters.[16] Once again, therefore, Levy's statutory claim under Labor Code section 970 is preempted under section 301, because it inherently requires the interpretation of a labor-management agreement. (Cf. *Robinson v. Fred Meyers Stores, Inc.* (D.Ariz. 2002) 184 F.Supp.2d 968, 975-976, opn. mod. (July 9, 2002) 252 F.Supp.2d 905 [2002 WL 32065635] [where state statute permitted employers to conduct drug testing in accordance with terms of an applicable CBA, and employee alleged that employer had terminated her in violation of statute, claim was preempted because adjudicating it would require interpretation of drug testing policy incorporated by reference into CBA].)[17]

III.

## DENIAL OF LEAVE TO AMEND COMPLAINT

■ We review the trial court's decision to deny Levy leave to amend his complaint for abuse of discretion. (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 296-297 [216 Cal.Rptr. 443, 702 P.2d 601].) As the trial court pointed out, Levy did not explain why he waited several months after the April 1996 Sideletter was produced in discovery to seek leave to amend his complaint; did not file a procedurally proper motion for leave to

---

law, we view the evidence in the light most favorable to Levy. (See *Saelzler v. Advanced Group 400, supra,* 25 Cal.4th at p. 768.)

[16]Levy cites *Lingle v. Norge Division of Magic Chef, Inc.,* for the proposition that, in Levy's words, "the mere need to 'look to' the collective bargain[ing] agreement for damages computation" is not a ground for preemption of a claim otherwise grounded on independent state law. (See *Lingle v. Norge Division of Magic Chef, Inc., supra,* 486 U.S. at p. 413, fn. 12 [108 S.Ct. at p. 1885].) In this case, however, resolution of Levy's claim would require more than just consulting the CBA to determine the applicable rate of pay at the union wage scale; it would require interpreting the CBA and the side letters to determine whether the union wage scale even applied to an employee in Levy's position. Such an inquiry is preempted by section 301.

[17]Because we affirm the trial court's judgment on the ground that all of Levy's causes of action are preempted under section 301, we need not address Levy's contention that his claims otherwise had sufficient merit, on the law and on the facts, to survive summary judgment. We also need not decide whether, if Levy had brought a civil action under section 301 to enforce his asserted rights under the CBA and/or the side letters, such an action would have been barred by the grievance and arbitration provisions of the CBA.

amend[18]; and did not request a continuance of the hearing on the summary judgment motion in order to pursue the matter. Under these circumstances, the trial court cannot be said to have abused its discretion in declining to allow the amendment. (*Record v. Reason* (1999) 73 Cal.App.4th 472, 486-487 [86 Cal.Rptr.2d 547].)

More importantly, the denial of Levy's request would have been harmless even if it were error. As should be clear from our discussion of the preemption issues, even if Levy's complaint were recast to reference the April 1996 Sideletter (or, for that matter, the April 1989 Letter of Understanding), rather than the May 1989 letter, all of his state law causes of action would still suffer from the same fatal defect of section 301 preemption. Allowing the amendment would only have made it even more clear that Levy's claims arose under a union-management labor agreement within the meaning of section 301. Because granting leave to amend would merely have delayed the inevitable, we cannot fault the trial court for rejecting the request, notwithstanding Skywalker Sound's lack of opposition. (Cf. *Record v. Reason, supra,* 73 Cal.App.4th at p. 487.)

---

[18]Levy relies on *Beverage v. Canton Placer Mining Co.* (1955) 43 Cal.2d 769 [278 P.2d 694] and *Babcock v. Antis* (1979) 94 Cal.App.3d 823 [156 Cal.Rptr. 673], disapproved on another ground, *Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 775-776, footnote 6 [98 Cal.Rptr.2d 1, 3 P.3d 286], for the proposition that a complaint may be amended to conform to proof without a formal motion. Even assuming this is true, neither case provides any support for allowing the amendment in this case, because the circumstances here are entirely different. In *Beverage,* an action for specific performance of a land sale contract, the trial court granted judgment on the pleadings in favor of the defendants shortly after the start of trial on the ground that the property description in the contract was insufficient to satisfy the statute of frauds, and the complaint did not plead sufficient facts to cure the defect. The Supreme Court held that in light of the defendants' failure to demur or otherwise give notice of their intent to attack the pleading earlier in the case, the court should have given the plaintiffs an opportunity to amend the complaint to fill the gap, and that the plaintiffs' failure to make a formal motion to amend was excused by the fact that the defendants' motion was brought without notice and was a "surprise." (*Beverage v. Canton Placer Mining Co., supra,* 43 Cal.2d at p. 778.) The duly noticed summary judgment motion filed by the defendants in this case did not involve any such "surprise," and Levy has not explained why he did not seek a continuance.

In *Babcock v. Antis, supra,* 94 Cal.App.3d 823, the appellate department of the superior court had reversed four municipal court judgments on the ground that the complaint in each case potentially demanded an amount in excess of the jurisdictional limit of the municipal court. The actual judgments were within the limit in three of the cases, and in favor of the defendants in the fourth. The Court of Appeal reversed, holding that the complaints could and should be amended, even after judgment, in order to cure their purely technical jurisdictional defects and preserve the otherwise valid judgments. Here, Levy sought to make a substantive amendment, not a purely technical one, and in an attempt to forestall the entry of a judgment, not to preserve a judgment that had already been entered.

## IV.

### DISPOSITION

The summary judgment in favor of Skywalker Sound is affirmed.

Haerle, Acting P. J., and Lambden, J., concurred.

A petition for a rehearing was denied June 4, 2003.