Filed 1/4/22  Chango Coffee v. Applied Underwriters CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CHANGO COFFEE, INC.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>APPLIED UNDERWRITERS, INC.,<br><br>Defendant and Respondent. | B297432<br><br>(Los Angeles County<br>Super. Ct. No. BC591586) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Randolph M. Hammock, Judge.  Affirmed.

Thomas Montague Hall for Plaintiff and Appellant.

Fine, Boggs & Perkins, Michael K. Perkins and William D. Wheelock for Defendant and Respondent.

_____

Plaintiff Chango Coffee, Inc. (Chango) challenges a grant of summary judgment for defendant Applied Underwriters, Inc. (AUI). Chango contends the trial court erred by granting summary judgment because there were triable issues of material fact as to whether AUI procured workers' compensation insurance for Chango, and whether three debits AUI made to Chango's bank account in 2012 were permitted by the parties' contract. Chango also contends the trial court erred by narrowly construing the complaint and denying Chango leave to amend. We find no error, and thus we will affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

A. *Background*

Between 2004 and 2011, Chango operated a small coffee shop in the Echo Park neighborhood of Los Angeles. In mid-2004, Chango entered into a contract with AUI, a payroll processing firm. Pursuant to the contract, AUI agreed to obtain workers' compensation insurance for Chango and to process its payroll, and Chango agreed to allow AUI to directly debit Chango's bank account in the amount of payroll disbursements plus a "multiplier" that included payments for workers' compensation premiums and AUI's fee.

The parties' weekly payroll processing cycle was as follows. By noon on Tuesdays, Chango faxed AUI its employee earnings statements, indicating the number of hours worked by each employee the preceding week. On Thursdays, AUI overnighted payroll checks to Chango and debited Chango's bank account in the amount of the employee payroll checks plus the multiplier. On Fridays, Chango received the payroll checks and a copy of AUI's weekly statement.

2

The relationship between Chango and AUI continued through the end of 2011. On January 1, 2012, Chango notified AUI that " 'we have sold Chango Coffee, Inc. as of January 1, 2012, and will no longer operate business. As a result, we request to close our account effective of that date.' " Subsequently, AUI advised Chango that its workers' compensation insurance coverage had been cancelled effective January 1, 2012, and " '[a]s a result of this cancellation, we are reviewing your account to determine any and all amounts due and owing, and we will provide you a final statement and supporting documentation as soon as that review is complete.' "

On January 4, January 6, and February 7, 2012, AUI debited Chango's account in the amounts of $4,054, $2,010, and $3,794, respectively. AUI's statements accompanying the first two debits stated that they were for the pay periods ending December 25, 2011 and January 1, 2012, respectively. AUI's statement accompanying notice of the third debit identified most of the charge as a "Balance to Minimum Premium Charge;" subsequent correspondence stated that the applicable workers' compensation policy "has a Minimum Premium of $5,000," and the "balance to minimum charge is $3,126.00."

B. *The Present Action*

Chango filed the present action against AUI on January 2, 2014. The complaint, filed as a limited civil action, alleged that in January and February 2012, AUI accessed Chango's bank account and withdrew about $10,000 without Chango's permission. Chango alleged that the withdrawn funds were not used for payroll or service fees, and the withdrawals were not authorized by the parties' contract. Chango alleged that these

3

withdrawals thus gave rise to causes of action for breach of contract, conversion, and fraud.

In August 2015, Chango moved to reclassify the case from limited civil to general civil. It asserted that discovery had revealed that AUI had failed to procure workers' compensation insurance for six of the seven years AUI provided payroll services for Chango, and thus Chango was entitled to recover at least an additional $30,000 in contract damages ($5,000 per year for six years). Thus, the amount in controversy exceeded the jurisdictional limit of $25,000. The trial court granted the motion to reclassify.

In November 2017, AUI moved to reclassify the case as a limited civil case. AUI contended that the complaint did not allege that it failed to obtain workers' compensation insurance for Chango, and Chango had refused to amend the complaint to include that allegation. AUI thus urged that Chango either should be ordered to amend the complaint to allege a failure to procure workers' compensation insurance or the case should be reclassified as a limited civil case.

The trial court (Judge Randolph Hammock) denied the motion to reclassify. Judge Hammock said that another bench officer had reclassified the case as a general civil case, and "this court . . . cannot simply reconsider and overrule Judge Sotelo's order reclassifying this case to unlimited jurisdiction."

C. *AUI's Motion for Summary Judgment*

In May 2018, AUI moved for summary judgment or, in the alternative, for summary adjudication. With regard to the January and February 2012 withdrawals from Chango's account, AUI asserted that Chango had given it written authorization to debit Chango's bank account weekly for payroll and fees.

4

Chango's January 1, 2012 letter to AUI did not terminate that authorization, but merely requested that AUI cease providing payroll services and workers' compensation insurance as of that date. Thus, AUI was authorized to debit Chango's bank account for the final amounts owed for payroll, insurance, and service fees through January 1, 2012.

AUI explained that, pursuant to the express terms of the parties' contract, it debited Chango's account three times after January 1, 2012. First, on January 4, 2012, AUI debited $4,054 for payroll and fees for the pay period ending on December 25, 2011. This was a resubmission of a debit attempted on December 29, 2011, which Chango's bank had declined. Second, on January 6, 2012, AUI debited $2,010 for payroll and fees for the pay period ending January 1, 2012. Finally, on February 7, 2012, AUI debited $3,794, which was the balance Chango owed on its workers' compensation insurance policy. AUI explained that the workers' compensation policy had an annual minimum policy premium of $5,000, and so if a policy was cancelled mid-year, the insured would be billed the balance owed—i.e., $5,000 less the amount already paid in the current policy year. As of January 1, 2012, Chango had paid workers' compensation premiums of $1,874, and thus its balance due was $3,126 ($5,000 – $1,874 = $3,126), plus a "short-rate premium" of $445 and a statutory assessment of $223.

With regard to AUI's alleged failure to procure workers' compensation insurance, AUI asserted that this claim was not alleged in the complaint, and it therefore was outside the scope of the motion for summary judgment. On the merits, AUI contended that the undisputed facts established that it had obtained workers' compensation insurance for Chango

5

throughout the term of the parties' contract. Specifically, AUI obtained workers' compensation insurance coverage for Chango through the Virginia Surety Company from September 3, 2004 until May 31, 2005, and through the California Insurance Company from June 1, 2005 until January 1, 2012. Copies of the California Insurance Company policies were authenticated by AUI's general counsel and were attached as exhibits to AUI's motion for summary judgment. AUI also asserted that it had sent notices of each year's policy renewal to Chango, and had mailed copies of the renewed policies to Chango and to its insurance agent. Thus, AUI asserted, in light of "the *actual issuance* of workers' compensation policies that were in force at all times from September 3, 2004 through January 1, 2012, there can be no question that even [Chango's] unpled [workers' compensation] claim lacks merit."

Finally, specifically with regard to Chango's claims for conversion and fraud, AUI asserted that a generalized claim for money is not actionable as conversion; Chango had consented to the types of withdrawals that were made from its bank account; and Chango had failed to allege any specific transaction that exceeded the purposes agreed to in the written contract.

D.    *Chango's Opposition*

In opposition to AUI's motion for summary judgment, Chango asserted that AUI had revealed in discovery, through the declaration of its general counsel, Jeffrey Silver, that AUI had not procured workers' compensation insurance for Chango as required by the parties' written agreement. Further, although Chango terminated its contract with AUI on January 1, 2012, AUI continued to withdraw money from Chango's checking account until at least February 7, 2012. Chango thus asserted

6

that triable issues of material fact existed as to whether AUI had procured workers' compensation insurance for Chango and whether the 2012 debits were authorized by the terms of the parties' contract. Finally, Chango urged the motion for summary judgment should be denied because AUI had refused to allow Chango to depose attorney Silver about whether AUI had procured workers' compensation insurance for Chango.

E. *Trial Court's Order Granting Summary Judgment*

The trial court granted the motion for summary judgment on March 4, 2019. With regard to the breach of contract claim, the court held that AUI had presented evidence that the debits from Chango's bank account in January and February 2012 were authorized by the parties' contract, and Chango "does not cite any **evidence** sufficient to raise a triable issue of material fact" suggesting to the contrary. Further, Chango had not pled that AUI failed to obtain workers' compensation insurance, and it "cannot defeat summary judgment by showing a triable issue as to an unpled theory." Finally, AUI's failure to allow Silver to be deposed was irrelevant to the summary judgment motion because Chango had not sought to continue the hearing, nor had it described in its opposition what facts it believed could be obtained from Silver's deposition.

With regard to the conversion claim, the court noted that consent is a complete defense to conversion. AUI had presented evidence, which Chango did not dispute, that the parties' contract permitted AUI to withdraw funds from Chango's bank account for payroll and business services. Further, as to the February 7, 2012 withdrawal, AUI had submitted a copy of the workers' compensation policy in effect from September 2011 to September 2012, with Chango as the named insured. As such, there was no

conversion of funds because Chango at least impliedly consented to deductions from its account for premiums and other mandatory charges.

Finally, with regard to the fraud claim, the court found that AUI had cited evidence that all of its withdrawals from Chango's bank account were permitted under the contract, and Chango failed to cite any evidence sufficient to raise a triable issue of material fact on this issue.

Judgment for AUI was entered on May 13, 2019. Chango timely appealed.

## DISCUSSION

Chango contends: (1) the trial court erred in summarily adjudicating each of its causes of action, and (2) the trial court abused its discretion by denying leave to amend the complaint. As we discuss, these claims lack merit.

## I.
## Legal Standards and Standard of Review

"Code of Civil Procedure section 437c, subdivision (c) provides that summary judgment is to be granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. A defendant 'moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact.' (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) A defendant may meet this burden either by showing that one or more elements of a cause of action cannot be established or by showing that there is a complete defense. (*Ibid.*)

"If the defendant's prima facie case is met, the burden shifts to the plaintiff to show the existence of a triable issue of

8

material fact with respect to that cause of action or defense. (*Aguilar*, *supra*, 25 Cal.4th at p. 849; *Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261.) '[T]o meet that burden, the plaintiff "may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . ." ' (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476–477.) Ultimately, the moving party 'bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law.' (*Aguilar*, at p. 850.)

"We review a summary judgment ruling de novo to determine whether there is a triable issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972.) ' "Since defendant[] obtained summary judgment in [its] favor, 'we review the record de novo to determine whether [it has] conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial.' " ' (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.)" (*Hedayatzadeh v. City of Del Mar* (2020) 44 Cal.App.5th 555, 560–561.)

We review for an abuse of discretion the trial court's decision to deny Chango leave to amend its complaint. (*Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 770–771; *Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 296–297.)

9

## II.

## The Trial Court Did Not Err by Summarily Adjudicating Chango's First Cause of Action for Breach of Contract

Chango contends the trial court erred by summarily adjudicating its first cause of action for breach of contract. For the reasons that follow, this claim lacks merit.

### A. *Post-Termination Withdrawals*

As discussed, the trial court found that AUI had presented evidence that its January and February 2012 withdrawals from Chango's bank account were authorized by the parties' contract, and Chango did not cite any contrary evidence in response. On appeal, Chango does not appear to challenge the propriety of the first two withdrawals, but it urges that the third, a purported final workers' compensation insurance premium, was improper because "[b]illing for insurance premiums after the contract ended clearly contradicts AUI's claim that the contract called for 'pay-as-you-go . . . each pay period.'"

The "pay-as-you-go" language—for which Chango does not provide a citation—appears to derive from an "Integrated Service Proposal and Rate Quotation" (proposal) that AUI provided to Chango in 2004. Chango has not demonstrated, however, that this language was a term of the parties' contract, nor has it shown how such language, even if part of the contract, was violated by the February 7 withdrawal.

"In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record. Rather than scour the record unguided, we may decide that the appellant has waived a point urged on appeal when it is not supported by accurate citations to the record. (Cal. Rules of Court, rule 8.204(a)(1)(C);

10

*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239 & fn. 16; *Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 29–30; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979.)  Similarly, we may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt.  (*Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1; Cal. Rules of Court, rule 8.204(a)(1)(B).)"  (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287.)  In the present case, therefore, because Chango has not provided any legal or factual citations for its assertion that AUI's 2012 debits violated the parties' contract, we shall not address it on the merits.

    *B.    Failure to Procure Workers' Compensation Insurance*

Chango's primary contention with regard to its breach of contract claim is that the trial court erred by failing to consider its assertion that AUI failed to obtain workers' compensation insurance on Chango's behalf.  According to Chango, its cause of action for breach of contract was broad enough to encompass the workers' compensation allegation, and thus the trial court erred in finding that its workers' compensation claim was not included within its "original causes of action."

We do not agree.  The pleadings play a key role in a summary judgment motion and " ' " 'set the boundaries of the issues to be resolved at summary judgment.' " ' "  (*Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 289.)  '[T]he scope of the issues to be properly addressed in [a] summary judgment motion' is generally 'limited to the claims framed by the pleadings.  [Citation.]  A moving party seeking summary judgment or adjudication is not required to go beyond

11

the allegations of the pleading, with respect to new theories that could have been pled, but for which no motion to amend or supplement the pleading was brought, prior to the hearing on the dispositive motion. [Citations.]' (*Howard v. Omni Hotels Management Corp.* (2012) 203 Cal.App.4th 403, 421.)" (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 444.)

Here, the entirety of Chango's breach of contract claim, as set forth in its pleading, was as follows:

¶ 1: "[O]n or about June 1, 2005 a . . . written agreement was made between [Chango] and [AUI]. . . . The essential terms of the agreement are [that] [AUI] would provide, inter alia, payroll processing and payment services for [Chango], and [Chango] would allow [AUI] access to [Chango's] checking account to write payroll checks and debit service fees. [AUI] falsely represented that all charges would be billed and debited per month."

¶ 2: *"On or about January 3, 4, 6 and February 7, 2012, [AUI] breached the agreement by . . . [a]ccessing [Chango's] checking account and withdrawing [Chango's] funds without permission and without justification or purpose under the contract between [Chango] and [AUI]."*

¶ 3: "[Chango] has performed all obligations to [AUI] except those obligations [Chango] was prevented or excused from performing."

¶ 4: "[Chango] suffered damages legally (proximately) caused by [AUI's] breach of the agreement as follows: Approximately $10,000 withdrawn from [Chango's] checking account; Loss of use of money since improper withdrawal (conversion) by [AUI]." (Italics added.)

12

These allegations—that AUI breached the parties' agreement by withdrawing money from Chango's bank account "[o]n or about January 3, 4, 6 and February 7, 2012"—manifestly did not put AUI on notice that Chango was also alleging that AUI breached the agreement by failing to procure workers' compensation insurance for Chango between 2005 to 2012. And, while Chango could have amended its complaint to broaden its breach of contract claim, it never did so.[1] Thus, the trial court did not err in refusing to consider Chango's evidence that AUI failed to procure workers' compensation insurance.

In any event, even had the trial court considered Chango's "evidence," the result necessarily would have been the same. In support of its motion for summary judgment, AUI submitted the declaration of Jeffrey Silver, its general counsel and corporate secretary. Silver declared that AUI initially obtained workers'

[1] Chango contends that the complaint embraced the workers' compensation insurance claim because the contract was " 'integrated' " and "included both workers' compensation insurance and payroll processing." Chango urges that its workers' compensation insurance claim therefore "fit precisely under the existing cause of action for breach of contract." Not so. Although the parties' contract contained a variety of terms, including terms addressing both payroll processing and workers' compensation insurance, the pleading rules required Chango to specifically allege which terms it claimed AUI violated. (E.g., *Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 174 ["It is well settled a pleader must state with certainty the facts constituting a breach of contract"]; see also *Levy v. State Farm Mutual Automobile Ins. Co.* (2007) 150 Cal.App.4th 1, 5 ["Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity."].)

compensation insurance for Chango through Virginia Surety Company, which issued a policy to Chango effective September 3, 2004. AUI acquired California Insurance Company in 2005, and it provided workers' compensation insurance to Chango through California Insurance Company from June 1, 2005 until January 2012. Copies of those policies were verified by Silver and were attached as Exhibits J through P to AUI's notice of lodgment.

In opposition to AUI's motion for summary judgment, Chango asserted that Silver's declaration "directly contradict[ed]" his earlier "declaration," signed on January 13, 2015, which "disclosed that [AUI's] files did not include insurance policies for any policy issued to [Chango], and did not include transmittal letters for policies or for changes in policies [or] insurers." The "declaration" to which Chango refers is Silver's verification, submitted with AUI's response to Chango's request for production of documents, which stated that "I am informed and believe that the matters stated [in AUI's discovery responses] are true and on that ground certify or declare under penalty of perjury under the laws of the State of California that the same are true and correct." Silver's verification did *not* say, as Chango asserted in the trial court and asserts on appeal, that AIU "did not have any records of having provided workers' compensation insurance to [Chango]."

Although Silver's verification did not contain an affirmative statement about workers' compensation insurance, Chango attributes such a statement to the verification because the documents produced by AUI in response to Chango's request for production of documents "did not include any insurance policies" and "did not include any record that any of the insurance premiums paid by [Chango] to [AUI] had been paid to any

14

insurance company for insurance policies." Thus, Chango suggests, Silver's verification creates a triable issue of material fact as to AUI's procurement of workers' compensation insurance policies for Chango.

Not so. As AUI correctly notes, Chango never sought production of copies of its workers' compensation insurance policies or of all documents possessed by AUI concerning Chango. Instead, Chango's document request was much narrower: It sought the contents of the files (1) "referred to as 'my file on Chango' by [AUI employee] Ed Karmazin . . . [in] his declaration of April 17, 2014," and (2) "that refer or relate to Chango in each of the files referred to as 'our files' by Ed Karmazin [in] his declaration of April 17, 2014."[2] Silver's verification, therefore, stated only that AUI had produced the copies of the contents of the identified files—not that it had produced *all* of AUI's records concerning Chango. Accordingly, nothing in Silver's 2015 verification contradicted his subsequent declaration that AUI provided Chango with workers' compensation insurance at all times between September 3, 2004 and January 2012.

Chango also contends that the trial court "weighed" Silver's testimony "and found some of his declaration credible, and some not." Again, not so. Instead, the trial court found—as do we— that AUI's failure to produce copies of the workers' compensation policies "does not mean that such polic[ies] never existed," and

---

[2]     Karmazin's declaration stated that he maintained a copy of the contract between Chango and AUI in "my file on Chango." He further stated that copies of the biweekly reporting forms Chango sent to AUI were maintained in AUI's contract-processing file in Omaha, Nebraska.

thus that Chango had failed to raise a triable issue of material fact as to the alleged nonexistence of the policies.

In short, there is absolutely no evidence, and Chango pointed to none, that AUI failed to procure workers' compensation insurance for Chango at any time between 2005 and 2011. The trial court therefore did not err in summarily adjudicating Chango's first cause of action for breach of contract.

## III.
## The Trial Court Did Not Err by Summarily Adjudicating Chango's Second and Third Causes of Action (Conversion and Fraud)

Chango's second cause of action (conversion) alleges that AUI converted Chango's funds by withdrawing sums from Chango's bank account in January and February 2012 "that were not authorized under any portion of the contract between [Chango] and [AUI]." Chango's third cause of action (fraud) alleges that AUI promised to access Chango's bank account only for the purposes agreed to in the contract between the parties, but this representation was false because AUI "intended to withdraw funds from [Chango's] checking account for its own uses and it used its access to [Chango's] checking account to withdraw amounts not incurred by [Chango] for the services provided by [AUI]."

Chango contends that the trial court erred by summarily adjudicating the conversion and fraud causes of action for essentially the same reason it urged error with regard to the breach of contact claim—namely, it argues that Silver's verification of AUI's document request created a triable issue of material fact as to whether AUI obtained workers' compensation

16

insurance on Chango's behalf. That contention fails for the reasons discussed above. (See section II, *ante*.)

Chango also urges that the February 12 withdrawal was not justified by the terms of the workers' compensation policies because such policies "were not issued until after the contract was formed" and, therefore, were "not part of the parties['] contract formed in 2004." Chango does not support this assertion with any citation to legal authority or to the record, and thus we do not consider it. (See *City of Santa Maria v. Adam*, *supra*, 211 Cal.App.4th at pp. 286–287.)

## IV.

## The Trial Court Did Not Abuse Its Discretion by Refusing to Allow Chango to Amend Its Complaint

Chango contends, finally, that the trial court abused its discretion by denying its oral motion to amend the complaint. We do not agree. As noted above, the pleadings delimit the issues to be considered on a motion for summary judgment, and thus a defendant moving for summary judgment need address only the issues raised by the complaint. In other words: "To create a triable issue of material fact, the opposition evidence must be directed to issues raised by the pleadings. [Citation.] If the opposing party's evidence would show some factual assertion, legal theory, defense or claim not yet pleaded, that party should seek leave to amend the pleadings *before the hearing on the summary judgment motion*." (*Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1264–1265, italics added; see also *Huff v. Wilkins* (2006) 138 Cal.App.4th 732, 746 [trial court did not abuse its discretion by denying leave to amend complaint three days before summary judgment hearing: " ' "[E]ven if a good amendment is proposed in proper form, unwarranted delay in

17

presenting it may—of itself—be a valid reason for denial." ' "]; *Levy v. Skywalker Sound, supra*, 108 Cal.App.4th at pp. 770–771 [trial court did not abuse its discretion in declining to allow plaintiff to amend its complaint where plaintiff "did not explain why he waited several months . . . to seek leave to amend his complaint; did not file a procedurally proper motion for leave to amend; and did not request a continuance of the hearing on the summary judgment motion in order to pursue the matter."].)[3]

In the present case, Chango does not assert on appeal, nor does the record show, that Chango sought leave to amend its complaint prior to the hearing on AUI's motion for summary judgment. Instead, Chango made this request for the first time at the summary judgment hearing, after the trial court indicated that its tentative was to grant the motion. The trial court therefore did not abuse its discretion in denying the request to amend as untimely.

Further, even had the trial court abused its discretion by denying leave to amend, any such error was harmless. As discussed above, Chango failed in opposition to the motion for summary judgment to identify any evidence to support its claim

---

[3] *Kirby v. Albert D. Seeno Construction Co.* (1992) 11 Cal.App.4th 1059, 1067–1068, on which Chango relies, addresses a somewhat different issue—namely, whether a plaintiff should have been permitted to amend its complaint after defendant filed a purported motion for summary judgment that was "unsupported by declarations or other evidentiary material," and thus "functioned more like a challenge to the sufficiency of the pleadings" (*id.* at p. 1067). In the present case, in contrast, AUI supported its motion with evidentiary material, and thus permitting Chango to amend the complaint likely would have required the parties to take additional discovery.

that AUI failed to procure workers' compensation insurance. Thus, even if Chango had been permitted to amend the complaint, summary judgment still would have been proper.

## DISPOSITION

The judgment is affirmed.  Respondent AUI is awarded its appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

KNILL, J.*

---

\*      Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.