Filed 9/12/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SYLVIA NOLAND, | B331918 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC716737) |
| v. | |
| LAND OF THE FREE, L.P., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen I. Goorvitch, Judge.  Affirmed.

Mostafavi Law Group and Amir Mostafavi for Plaintiff and Appellant.

Yadegari & Associates and Michael Yadegari for Defendants and Respondents.

———————————

This appeal is, in most respects, unremarkable. Plaintiff filed a complaint alleging a variety of employment-related claims, and the trial court granted defendants' motion for summary judgment, finding no triable issues as to any of those claims. Plaintiff challenges the grant of summary judgment on several grounds, none of which raises any novel questions of law or requires us to apply settled law in a unique factual context. In short, this is in most respects a straightforward appeal that, under normal circumstances, would not warrant publication.

What sets this appeal apart—and the reason we have elected to publish this opinion—is that nearly all of the legal quotations in plaintiff's opening brief, and many of the quotations in plaintiff's reply brief, are fabricated. That is, the quotes plaintiff attributes to published cases do not appear in those cases or anywhere else. Further, many of the cases plaintiff cites do not discuss the topics for which they are cited, and a few of the cases do not exist at all. These fabricated legal authorities were created by generative artificial intelligence (AI) tools that plaintiff's counsel used to draft his appellate briefs. The AI tools created fake legal authority—sometimes referred to as AI "hallucinations"—that were undetected by plaintiff's counsel because he did not read the cases the AI tools cited.

Although the generation of fake legal authority by AI sources has been widely commented on by federal and out-of-state courts and reported by many media sources, no California court has addressed this issue. We therefore publish this opinion as a warning. Simply stated, no brief, pleading, motion, or any other paper filed in any court should contain *any* citations—whether provided by generative AI or any other source—that the attorney responsible for submitting the pleading has not

2

personally read and verified.  Because plaintiff's counsel's conduct in this case violated a basic duty counsel owed to his client and the court, we impose a monetary sanction on counsel, direct him to serve a copy of this opinion on his client, and direct the clerk of the court to serve a copy of this opinion on the State Bar.

<strong>FACTUAL AND PROCEDURAL BACKGROUND</strong>

## I.      Complaint.

 Sylvia Noland (Noland) filed the present action in August 2018, and filed the operative second amended complaint (complaint) in August 2019.  The complaint alleges as follows:

Defendants Jose Luis Nazar and Land of the Free, L.P. (collectively, defendants) own an office building located at 640 S. San Vicente Boulevard (the San Vicente property) and an event space located at 2400 Laurel Canyon Boulevard in Los Angeles (the Laurel Canyon property).  In January 2018, defendants hired plaintiff to work as their leasing agent and sales representative.  In that capacity, plaintiff showed the properties to potential lessees, prepared deal memos, and collected deposits and signatures on leases and contracts.

Defendants agreed to pay plaintiff for administrative work, plus a 6 percent commission for each event she booked at the Laurel Canyon property and a 2 percent commission for each tenant she secured for the San Vicente property.  Defendants further agreed to pay plaintiff a $3,500 monthly draw against her earnings and commissions.  However, defendants never paid plaintiff $1,000 per month for her administrative work, and in 2018 defendants told plaintiff they would no longer pay her a monthly draw.  Further, defendants failed to pay plaintiff a

3

$60,000 commission she was owed for securing a lease worth $3.5 million over a 10-year term. Defendants also failed to pay plaintiff minimum wage or overtime, to maintain proper time records, and to provide plaintiff itemized wage statements.

In about June 2018, plaintiff learned that defendants did not have the necessary permits to lease office space at the San Vicente property to medical providers. Plaintiff "refused to work under intolerable working conditions that required [her to] secure lease agreements in blatant violation of the law and act unethically towards clients," and she "was therefore left with no reasonable alternative but to resign and was constructively terminated."

Plaintiff's complaint asserted 25 causes of action, including violations of California's wage and hour laws (1st–5th and 14th–22nd causes of action), retaliation (6th cause of action), constructive and wrongful termination (7th and 23rd causes of action), breach of contract (8th cause of action), quantum meruit (11th cause of action), violation of Business and Professions Code section 17200 (12th cause of action), penalties under the Private Attorneys General Act (PAGA; Lab. Code, § 1298) (13th cause of action), misclassification of employee as independent contractor (24th cause of action), and intentional infliction of emotional distress (25th cause of action).[1]

---

[1] The trial court sustained demurrers to the ninth, tenth, and eighteenth causes of action, and thus we do not discuss them.

4

## II. Defendants' first motion for summary judgment.

Defendants filed a motion for summary judgment in September 2022, noticing a hearing for December 1, 2022. Plaintiff moved to strike the motion as untimely. The trial court (Hon. David Sotelo) denied the summary judgment motion on the ground that it was not filed sufficiently in advance of the hearing date.

## III. Defendants' request to continue trial and second motion for summary judgment.

### A. Request to continue trial.

In January 2023, defendants filed an ex parte application to continue the trial from January to May 2023. Defendants' counsel stated that he had recently been in an automobile accident that limited his mobility and required multiple doctors' visits. Accordingly, "It would be very difficult for Defendant[s'] counsel to appear in trial at this time while he is in recovery."

Plaintiff responded that she was amenable to continuing the trial as long as the statutory five-year deadline for bringing the case to trial was tolled. At a January 2023 hearing, the parties stipulated to extending the five-year period through the end of December 2023, and the trial court continued the trial to May 2023. That date was later vacated, and trial was set for June 2023.

### B. Second motion for summary judgment.

Defendants refiled their motion for summary judgment in January 2023. The motion was essentially identical to that filed in September 2022, urging that there were no triable issues of material fact as to any of plaintiff's causes of action.

Plaintiff responded by filing a motion for sanctions. Plaintiff asserted that sanctions were appropriate because (1) defendants had sought a trial continuance for the purpose of refiling their summary judgment motion, (2) defendants' second motion for summary judgment did not assert new or different facts or legal issues, and it therefore violated Code of Civil Procedure[2] section 437, subdivision (f)(2), and (3) the date on which the motion for summary judgment was set to be heard was fewer than 30 days prior to the date set for trial.

On May 25, 2023, the trial court denied the motion for sanctions and continued the hearing to allow plaintiff to file a substantive opposition to the summary judgment motion. The court's order explained as follows:

"This case originally was assigned to [Judge] David Sotelo . . . . Defendants previously filed a motion for summary judgment on September 29, 2022, and noticed the hearing for December 1, 2022, in advance of a trial date of January 17, 2023. Judge Sotelo denied the motion for lack of statutory notice without addressing the merits. Following Judge Sotelo's retirement, the case was reassigned . . . .

"Now, Defendants again move for summary judgment or, in the alternative, summary adjudication. Plaintiff did not file an opposition, but instead objected under . . . section 437c(f)(2), arguing that this is a successive motion for summary judgment. . . . The Court overrules the objection for three independent reasons.

---

[2] All subsequent undesignated statutory references are to the Code of Civil Procedure.

6

"First, the Court interprets section 437c(f)(2) as prohibiting successive motions for summary judgment only when there has been a prior ruling on the merits. As discussed, Judge Sotelo denied the motion on procedural grounds without resolving the merits. Therefore, section 437c(f)(2) does not prohibit Defendants from filing a second motion for summary judgment.

"Second, . . . [a] trial court may not refuse to hear a motion for summary judgment filed and served sufficiently in advance of trial. [Citation.] Defendants had a right to a decision on the merits, given that they filed their motion 110 days before trial.

"Finally, in the alternative, the Court exercises its discretion and elects to consider Defendants' motion for summary judgment on the merits. Notwithstanding section 437c(f)(2), the Court has inherent authority to consider a second motion for summary judgment, provided there is good cause to do so. [Citation.] The Court does so for the reasons stated. Moreover, the issues raised in Defendants' motion should be decided in advance of trial. It would not promote the interests of judicial economy to select the jury and permit Plaintiff to conduct her case-in-chief before ruling on these issues on a motion for non-suit."

Plaintiff thereafter filed a substantive opposition to defendants' motion for summary judgment, urging that there were triable issues of fact as to each cause of action. The court held a hearing on the motion and, after taking the motion under submission, granted summary judgment for defendants. Among other things, the court found the evidence was undisputed that (1) plaintiff was an independent contractor, not an employee, and thus the wage and hour laws did not apply to her, (2) defendants did not owe plaintiff a commission because the tenant plaintiff

7

said she secured ultimately did not execute a lease with defendants, (3) plaintiff had not demonstrated that she was subject to any adverse employment actions that could form the basis for a retaliation action, and (4) plaintiff did not demonstrate triable issues as to her intentional infliction of emotional distress claim.

On July 25, 2023, plaintiff filed a notice of appeal from the order granting summary judgment.[3]

---

[3] An order granting summary judgment is not an appealable order. (E.g, *Champlin/GEI Wind Holdings, LLC v. Avery* (2023) 92 Cal.App.5th 218, 223; *Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 761, fn. 7.) Thus, in October 2023, this court directed plaintiff to provide the court with an appealable judgment or to explain why the appeal should not be dismissed. Plaintiff responded in a letter brief that no judgment had been entered, but the appeal should not be dismissed because the order granting summary judgment was a final order that resolved all pending issues between the parties. This court deferred the appealability question to the panel that would decide the appeal on the merits.

Although more than 18 months have passed since this court advised plaintiff of the need to obtain a judgment, plaintiff's counsel has not obtained one. Accordingly, we would be well within our discretion to dismiss the appeal. (See *Blauser v. Dubin* (2024) 106 Cal.App.5th 918, 920–923 [dismissing appeal from minute order granting motion for nonsuit].) Nonetheless, in the interests of justice and to avoid delay, we construe the order granting summary judgment as incorporating an appealable judgment, and the notice of appeal as appealing from such judgment. (See *Blauser*, at p. 922 & fn. 4; *Levy v. Skywalker Sound*, *supra*, 108 Cal.App.4th at p. 761, fn. 7.)

## DISCUSSION

### I. Plaintiff's counsel's reliance on fabricated legal authority.

We begin by noting that nearly all of the quotations in plaintiff's opening brief, and many of the quotations in plaintiff's reply brief, have been fabricated. That is, as noted above, although most of the cases to which the quotes are attributed exist, the quotes do not. Further, many of the cases plaintiff cites do not support the propositions for which they are cited or discuss other matters entirely, and a few of the cases do not exist at all. To give just a few examples:

Plaintiff asserts: "In *Schimmel v. Levin* (2011) 195 Cal.App.4th 81, the court discussed the legislative purpose behind Section 437c(f)(2), highlighting that it was enacted to prevent abuse of the summary judgment procedure by disallowing multiple motions on the same issues." In fact, *Schimmel* does not contain a single reference to either summary judgment or section 437c. Appellant's opening brief also purports to quote *Schimmel* as follows: "In *Schimmel v. Levin* (2011) 195 Cal.App.4th 81, 86–87, the court held: 'Section 437c(f)(2) embodies a legislative judgment that a party should not be allowed to bring multiple motions for summary judgment based on the same issues without demonstrating newly discovered facts or circumstances or a change in the law. This policy applies even when the prior motion was denied on procedural grounds.'" The quoted language does not appear in *Schimmel*—or in any other case of which we are aware.

Plaintiff also asserts: "In *Regency Health Services, Inc. v. Superior Court* (1998) 64 Cal.App.4th 1496, 1504, the court emphasized: 'A continuance should not be granted when it is

9

sought to facilitate procedural maneuvers rather than to promote justice.' " *Regency* does not address the granting of a continuance, and the quoted language does not appear anywhere in the opinion.

Plaintiff further asserts: "The court in *Peake v. Underwood*, 227 Cal.App.4th 428, 448 (2014), emphasized that filing a second dispositive motion without new facts or law is frivolous and subject to sanctions." *Peake* does not address the filing of a second dispositive motion, and the only sanctions at issue in that case were for filing a frivolous pleading. (*Id.* at pp. 432–450.)

Plaintiff additionally asserts: "As in *Goldstine v. Liberty Mut. Ins. Co.*, 2020 WL 6216738 (W.D. Wash. 2020), where sanctions were imposed for similar baseless claims of personal hardship to delay proceedings, Mr. Yadegari's actions warranted sanctions under California Code of Civil Procedure § 128.5 for making false statements to obtain an improper advantage." *Goldstine* appears to be a fabricated case.

And, plaintiff asserts: "The California Court of Appeal in *Heckert v. MacDonald*, 208 Cal.App.3d 832, 837 (1989), emphasized that sanctions should be imposed where a party uses procedural rules to gain an unfair advantage by engaging in 'frivolous litigation tactics.' " The words "frivolous," "unfair," and "tactics" do not appear in *Heckert*, which concerns the appellants' claim that the trial court erred by refusing to order their real estate broker to pay their attorney fees as damages.

In total, appellant's opening brief contains 23 case quotations, 21 of which are fabrications. Appellant's reply brief contains many more fabricated quotations. And, both briefs are

peppered with inaccurate citations that do not support the propositions for which they are cited.

The extensive reliance on nonexistent legal authority would justify striking appellant's opening brief or dismissing the appeal. (See, e.g., *In re Marriage of Deal* (2022) 80 Cal.App.5th 71, 77–81 [dismissing frivolous appeal]; *Huang v. Hanks* (2018) 23 Cal.App.5th 179, 182 [" 'appellate courts possess the . . . inherent power to summarily dismiss any action or appeal which . . . is based upon . . . frivolous grounds' "].)  Nonetheless, because nothing indicates that plaintiff was aware that her counsel had fabricated legal authority, and defendants addressed plaintiff's contentions on the merits, we will do the same.  (See *People v. Wende* (1979) 25 Cal.3d 436, 443 [affirming on the merits rather than dismissing appeal as frivolous:  "Once the record has been reviewed thoroughly, little appears to be gained by dismissing the appeal rather than deciding it on its merits"].)[4]

## II.    Plaintiff's substantive arguments lack merit.

### A.    The trial court did not abuse its discretion by considering defendants' second motion for summary judgment on the merits.

Section 437c, subdivision (f)(2), provides:  "A party shall not move for summary judgment based on issues asserted in a prior motion for summary adjudication and denied by the court unless that party establishes, to the satisfaction of the court, newly discovered facts or circumstances or a change of law supporting the issues reasserted in the summary judgment motion."

---

[4]    We will, however, impose sanctions on plaintiff's counsel for filing a frivolous brief, as we discuss in part III of the Discussion.

11

Plaintiff contends that because defendants' second motion for summary judgment did not assert newly discovered facts or a change of law, the trial court lacked discretion under section 437c, subdivision (f)(2) to consider it.  The trial court's authority to consider defendants' renewed motion for summary judgment is a question of law, which we review de novo. (*Marshall v. County of San Diego* (2015) 238 Cal.App.4th 1095, 1105 (*Marshall*); *People v. Lujan* (2012) 211 Cal.App.4th 1499, 1507 [whether a trial court has inherent authority to take an action is reviewed de novo].)

Plaintiff's contention is directly contrary to our Supreme Court's decision in *Le Francois v. Goel* (2005) 35 Cal.4th 1094 (*Le Francois*).  There, the high court held that while section 437c, subdivision (f)(2) "prohibit[s] *a party* from making renewed motions not based on new facts or law," it does not restrict a trial court's inherent authority in any manner.  (*Le Francois*, at pp. 1096–1097.)  Indeed, the court said, an interpretation of section 437c, subdivision (f)(2) that limited the trial court's authority to reconsider its own rulings would raise "difficult constitutional questions"—namely, whether the statute " 'emasculate[s] the judiciary's core power to decide controversies between parties.' " (*Le Francois*, at pp. 1104–1105.)

The *Le Francois* court explained that while a trial court is not required to rule on a second motion for summary judgment, courts "cannot prevent a party from communicating the view to a court that it should reconsider a prior ruling." (*Le Francois*, *supra*, 35 Cal.4th at p. 1108.)  Further, "it should not matter whether the 'judge has an unprovoked flash of understanding in the middle of the night' [citation] or acts in response to a party's suggestion.  If a court believes one of its prior interim orders was

erroneous, it should be able to correct that error no matter how it came to acquire that belief." (*Ibid.*) Thus, the court said, section 437c does "not limit a *court's* ability to reconsider its previous interim orders on its own motion, as long as it gives the parties notice that it may do so and a reasonable opportunity to litigate the question."[5] (*Le Francois*, at p. 1097; see also *id.* at pp. 1108–1109 ["To be fair to the parties, if the court is seriously concerned that one of its prior interim rulings might have been erroneous, and thus that it might want to reconsider that ruling on its own motion . . . it should inform the parties of this concern, solicit briefing, and hold a hearing"]; *Marshall*, *supra*, 238 Cal.App.4th at pp. 1104–1107 [trial court had inherent authority to entertain successive motions for summary judgment or summary adjudication]; *Minick v. City of Petaluma* (2016) 3 Cal.App.5th 15, 34 ["Trial courts always have discretion to revisit interim orders in service of the paramount goal of fair and accurate decisionmaking"].)

*Le Francois* is dispositive of plaintiff's contention that the trial court lacked discretion to consider the renewed motion for summary judgment. While the trial court was not *required* to rule on defendants' motion, it had discretion to exercise its inherent power to reconsider the prior order denying summary judgment and, having done so, to grant the motion. Plaintiff's contention to the contrary is wholly without merit.

---

[5] Because the trial court in *Le Francois* had not warned the parties it might change its previous ruling or allowed the parties to be heard on the issue, the Supreme Court remanded the matter "for the court and parties to follow proper procedure." (*Le Francois*, *supra*, 35 Cal.4th at p. 1109 & fn. 6.)

13

## B. The trial court did not abuse its discretion by denying plaintiff's motion for sanctions.

Below, plaintiff sought sanctions under sections 128.5 and 128.7 on the grounds that (1) defendants were prohibited under section 437c, subdivision (f)(2) from filing a second motion for summary judgment on the same grounds, and (2) defendants' counsel's claim that he had been in an automobile accident "was false, unsubstantiated, and was made in bad faith only to obtain [a] continuance to the trial date, so Defendants could file their second MSJ." In support, plaintiff asserted: "If [defendants' attorney] Mr. Yadegari's health condition resulting from the car accident indeed impaired his ability to prepare and appear for trial, it should also have prevented him [from preparing] for the [s]econd MSJ. . . . What is at issue here is whether Mr. Yadegari alleged his bodily injuries to continue the trial so he could re-use the [f]irst MSJ? The answer must be affirmative . . . ." The trial court rejected plaintiff's contention that sanctions were warranted, finding that there was good cause for defendants to renew their summary judgment motion, and the record did "not support Plaintiff's counsel's argument that Defendants' counsel misrepresented having been in an accident in order to obtain a continuance under false pretenses."

Plaintiff contends that the trial court erred by denying the motion for sanctions. We review a sanctions order for an abuse of discretion. (*McCluskey v. Henry* (2020) 56 Cal.App.5th 1197, 1205.) Under that standard, we "presume the trial court's order is correct and do not substitute our judgment for that of the trial court." (*Ibid.*) Further, we will uphold all orders based on express or implied findings supported by substantial evidence.

14

(*Hanna v. Mercedes-Benz USA, LLC* (2019) 36 Cal.App.5th 493, 513; *Frei v. Davey* (2004) 124 Cal.App.4th 1506, 1512.)

The trial court did not abuse its discretion by denying plaintiff's motion for sanctions. In support of defendants' application to continue trial, attorney Michael Yadegari declared under penalty of perjury that he "was recently in an accident where I was run over by a Sports Utility Vehicle ('SUV') while I was riding a scooter. This event has limited my mobility and I have to go to multiple doctors for my injury. It would be very difficult for me . . . to appear in trial at this time while I am in recovery." Plaintiff's sanctions motion provided no evidence that defendants' counsel had not been in an accident, but merely suggested the trial court should *infer* that was the case because counsel had been able to file a second motion for summary judgment. But the filing of the second motion for summary judgment did not require the inference plaintiff suggests. As plaintiff herself admits, the second summary judgment motion was "virtually identical" to the first, and thus the trial court was not required to infer from its filing that counsel's injuries were fabricated. Moreover, attending a trial in person requires a physical stamina that preparing a motion does not. And, in any event, the trial court was well within its discretion in crediting defendants' counsel's sworn testimony. (See, e.g., *Santa Clara County Correctional Peace Officers' Assn., Inc. v. County of Santa Clara* (2014) 224 Cal.App.4th 1016, 1027 [when reviewing a " ' "judgment based on affidavits or declarations," ' " a reviewing court " ' "defer[s] to [the trial court's] determination of credibility of the witnesses" ' "].) The trial court thus did not err by denying the motion for sanctions.

15

## C. Plaintiff has not demonstrated error with regard to her PAGA and employment claims.

Plaintiff contends the trial court erred by "fail[ing] to recognize disputed material facts in plaintiff's PAGA and employment claims." However, plaintiff does not identify any evidence in the record to support her claim. The contention, thus, is forfeited. (E.g., *Coziahr v. Otay Water Dist.* (2024) 103 Cal.App.5th 785, 799 (*Coziahr*) ["Points must be supported by reasoned argument, authority, and record citations, or may be deemed forfeited"]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].)

## D. The trial court did not err by denying plaintiff's request to reopen discovery.

At the May 25, 2023 hearing on defendants' motion for summary judgment, plaintiff's counsel asked the court to continue the hearing date and to reopen discovery. The court granted the motion to continue and allowed plaintiff to file an opposition on the merits, but it denied the request to reopen discovery. The court explained: "[T]he Court denies the request to reopen discovery for multiple independent reasons. Plaintiff's counsel represented at the case management conference that discovery should remain closed. [Citation.] Plaintiff's counsel's request was not made in writing with proper notice to Defendants' counsel. Plaintiff's counsel does not articulate what 'facts essential to justify opposition may exist but cannot, for reasons stated, be presented,' as required by . . . section 437c(h). This case was filed four years and nine months ago, and

16

Plaintiff's counsel has had ample opportunity to conduct discovery. The record reflects no good cause for Plaintiff's counsel not having conducted the depositions of those who provided declarations in support of the motion. Indeed, their identities and significance to the case would have been clear at the outset, even assuming they were not identified in discovery. Finally, the schedule does not permit time to reopen discovery, given the age of the case, the impending five-year deadline, and the difficulty of setting trials later this year given congestion of the Court's calendar and the holidays."

Plaintiff contends the trial court erred by denying her request to reopen discovery in order to oppose defendants' motion for summary judgment. Plaintiff cites no legal authority in support of this contention, and thus she has forfeited it. (*Coziahr*, *supra*, 103 Cal.App.5th at p. 799.)

### E.     The trial court did not abuse its discretion by "fail[ing] to review plaintiff's opposition papers before issuing its tentative ruling."

Plaintiff asserts that the order granting summary judgment must be reversed because the trial court "failed to review" her opposition to the summary judgment motion. In support, plaintiff points to the trial court's statements at the May 25, 2023 hearing that plaintiff "did not oppose the motion on the merits," and at the June 26, 2023 hearing that it was "a bit confused why [an opposition] was not filed in the first place." Plaintiff suggests that these statements "strongly impl[y] the court overlooked or ignored the opposition papers filed by the plaintiff, a clear procedural error."

Plaintiff's contention is entirely without merit. " 'It is presumed that official duty has been regularly performed'

17

(Evid. Code, § 664)," and in the absence of contrary evidence, we must assume that the trial court followed the law. (*People v. Campo* (1987) 193 Cal.App.3d 1423, 1432.) No such evidence appears here. To the contrary, plaintiff's counsel conceded in the trial court (and it is apparent from the record) that a substantive opposition to defendants' motion for summary judgment had not been filed before the May 25, 2023 hearing. Indeed, it was *because* no opposition had been filed that the summary judgment hearing was continued a month, to June 26, 2023. And, at the June 26, 2023 hearing, the court stated that it allowed plaintiff to file an opposition on the merits, but "[t]he opposition was not persuasive to me." The trial court could not have made that statement had it not reviewed plaintiff's opposition. We perceive no abuse of discretion.

For all the foregoing reasons, the trial court did not err by granting summary judgment for defendants. We therefore will affirm the judgment.

## III. Sanctions for pursuit of a frivolous appeal.

Prior to oral argument in this case, on our own motion we issued an order to show cause (OSC) why this court should not sanction plaintiff's counsel, Amir Mostafavi, for filing appellate briefs replete with fabricated quotes and citations. The OSC noted that nearly all of the quotations in appellant's opening brief, as well as many in the reply brief, were fabricated, and it warned that sanctions might include both an award of attorney fees and costs to defendants and an award of sanctions payable to the clerk of this court.

Attorney Mostafavi filed a written response. He acknowledged that he relied on AI "to support citation of legal issues" and that the fabricated quotes were AI-generated. He

18

further asserted that he had not been aware that generative AI frequently fabricates or hallucinates legal sources and, thus, he did not "manually verify [the quotations] against more reliable sources." Mostafavi accepted responsibility for the fabrications and said he had since taken measures to educate himself so that he does not repeat such errors in the future. He asserted, however, that "[t]he majority of citations are accurate and support the propositions that were being advanced"; the appeal is not frivolous; and in spite of fabricated quotations, the brief "stands on meritorious arguments that are fully supported by the record." Mostafavi therefore urges that "[s]hould the Court determine that some corrective action is warranted," the appropriate remedy "is correction of the briefs rather than monetary sanctions" because counsel's "citation irregularities," although "regrettable," "do not rise to the level requiring punitive measures given the isolated nature of the problems relative to the briefs' overall representation of the reversible errors made by the trial court based on the cited record and not necessarily in complete reliance on the cited authorities."

At oral argument, attorney Mostafavi explained that he wrote initial drafts of the briefs, "enhanced" the briefs with ChatGPT, and then ran the "enhanced" briefs through other AI platforms to check for errors. Counsel admitted that he did not read the "enhanced" briefs before he filed them.

For the reasons that follow, we decline to permit the filing of revised briefs and conclude that an award of sanctions against attorney Mostafavi is appropriate.

### A. Legal principles.

The Code of Civil Procedure permits an appellate court to impose sanctions for filing a frivolous appeal. (§ 907 ["When it

19

appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just"]; § 128.7 [attorney may be sanctioned for submitting pleading for which the attorney does not have a belief "formed after an inquiry reasonable under the circumstances" that the "legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"].) The Rules of Court similarly permit the court to sanction a party or attorney for filing a frivolous appeal or motion, as well as for including in the record matters not reasonably material to the appeal or "[c]ommitting any other unreasonable violation of these rules." (Cal. Rules of Court,[6] rule 8.276(a)(4); see also *Huschke v. Slater* (2008) 168 Cal.App.4th 1153, 1155–1156.)

An appeal is frivolous if it is prosecuted for an improper motive or indisputably has no merit. "To determine whether an appeal is frivolous, we apply both a subjective standard, examining the motives of appellant and its counsel, and an objective standard, analyzing the merits of the appeal. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649–650.) A finding of frivolousness may be based on either standard by itself, but the two tests are ordinarily used together, with one sometimes providing evidence relevant to the other." (*Malek Media Group, LLC v. AXQG Corp.* (2020) 58 Cal.App.5th 817, 834 (*Malek*).) An appeal may be objectively frivolous if "appellant's arguments rest on negligible legal foundation." (*Id.* at pp. 834–835, quoting *Kurokawa v. Blum* (1988) 199 Cal.App.3d 976, 995–996); see also

---

[6]     All subsequent rule references are to the Rules of Court.

*Estate of Kempton* (2023) 91 Cal.App.5th 189, 206 [quoting *Malek*].)

Even if an appeal is not frivolous, this court has authority under rule 8.276 to sanction a party who unreasonably violates the Rules of Court.  (See, e.g., *Bryan v. Bank of America* (2001) 86 Cal.App.4th 185, 194 [" '[e]ven if an appeal is neither frivolous nor filed solely for delay, we have independent authority under rule 26(a) of the California Rules of Court [now, rule 8.276] to sanction a party who "has been guilty of any . . . unreasonable infraction of the rules . . . as the circumstances of the case and the discouragement of like conduct in the future may require" ' "]; *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 96 [same].) The Rules of Court require parties to support each point in a brief "if possible, by citation of authority."  (Rule 8.204(a)(1)(B).) Thus, courts have, in appropriate cases, sanctioned attorneys for including improper material in appellate briefs or failing to support assertions of law with legal authority.  (See, e.g., *Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 166 [imposing sanctions for filing appellate briefs that "are cornucopias of" violations of rules of appellate procedure]; *Alicia T. v. County of Los Angeles* (1990) 222 Cal.App.3d 869, 884–885 [sanctioning attorney for citing unpublished opinion and asserting facts not supported by the record]; *Schulz v. Wulfing* (1967) 251 Cal.App.2d 776, 778–779 [sanctioning attorney for filing appellate brief containing "but two references to" the appellate record].)  Such sanctions are appropriate to enforce court rules and "to discourage similar conduct in the future." (*Evans*, at p. 168.)

## B. Counsel's reliance on fabricated legal authority renders this appeal frivolous and violative of the California Rules of Court.

Appellant's counsel has acknowledged that his briefs are replete with fabricated legal authority, which he admits resulted from his reliance on generative AI sources such as ChatGPT, Claude, Gemini, and Grok. Counsel says that he was not previously aware of the problem of AI "hallucinations," but he has educated himself about the issue since receiving the OSC.

In the last two years, many courts have confronted briefs populated with fraudulent legal citations resulting from attorneys' reliance on generative AI. One court noted: "The issue of AI programs populating and citing to fake or nonexistent legal authority, what has become known as AI 'hallucinations,' is an issue for courts that is becoming far too common." (*Powhatan County School Board v. Skinger* (E.D. Va., June 2, 2025, No. 3:24cv874) 2025 WL 1559593, at *9 (*Powhatan*).) Another court referenced a case citation that "has all the markings of a hallucinated case created by generative artificial intelligence (AI) tools such as ChatGPT and Google Bard that have been widely discussed by courts grappling with fictitious legal citations and reported by national news outlets." (*United States v. Hayes* (E.D. Cal. 2025) 763 F.Supp.3d 1054, 1065 (*Hayes*).) And yet another noted a plaintiff's "false citations" that "appear to be hallmarks of an artificial intelligence ('AI') tool," observing that "[i]t is now well known that AI tools 'hallucinate' fake cases." (*Schoene v. Oregon Dept. of Human Services* (D. Or., July 18, 2025, No. 3:23-cv-742-SI) 2025 WL 2021654 (*Schoene*), at *7; see also *Hall v. Academy Charter School* (E.D.N.Y. Aug. 7, 2025, No. 2:24-cv-08630-JMW) 2025 WL 2256653, at *4 ["The appearance of

hallucinated citations in briefs generated from AI is no longer in its nascent stage.  Regrettably, the number and regularity with which courts have been faced with hallucinations in court filings continues to rise"].)

One recent article suggests that the problem of AI hallucinations is getting worse, not better, noting that OpenAI's newest models hallucinated "30–50% of the time, according to company tests."  (Murray, *Why AI Hallucinations Are Worse Than Ever*, Forbes.com (May 6, 2025) <https://www.forbes.com/sites/conormurray/2025/05/06/why-ai-halluncinations-are-worse-than-ever/> [as of Sept. 12, 2025], archived at <https://perma.cc/Q8NU-AEZ9>.)  The article explained that many AI models "are designed to maximize the chance of giving an answer, meaning the bot will be more likely to give an incorrect response than admit it doesn't know something."  (*Ibid*.)  A district court recently noted that this means AI hallucinations are "more likely to occur when there are little to no existing authorities available that clearly satisfy the user's request" (*In re Richburg* (Bankr. D.S.C., Aug. 27, 2025, No. AP 25-80037-EG) 2025 WL 2470473, at *5, fn. 11)—such as, for example, when a lawyer asks a generative AI tool to supply a citation for an unsupported principle of law.  And, because AI responses generally are "grammatically correct and . . . presented as fact" (Murray, *supra*), fabrications are not readily apparent.  (See *Malone-Bey v. Lauderdale County School Board* (S.D. Miss., July 25, 2025, No. 3:25-cv-380-KHJ-MTP) 2025 WL 2098352, at *4 ["[H]allucinated cases look like real cases.  They are identified by a case name, a citation to a reporter, the name of a district or appellate court, and the year of the decision.  [Citation.]  But, they are not real cases.  These hallucinated cases are instead

23

inaccurate depictions of information from AI models that suffer from incomplete, biased, or otherwise flawed training data"].)

Many courts confronted with AI-generated authorities have concluded that filing briefs containing fabricated legal authority is sanctionable. (See, e.g., *Johnson v. Dunn* (N.D. Ala., July 23, 2025, No. 2:21-cv-1701-AMM) 2025 WL 2086116, at *1 [publicly reprimanding counsel for including fabricated citations in briefs, disqualifying counsel from further participation in the case, and referring counsel to the state bar]; *Powhatan, supra*, 2025 WL 1559593, at *10 ["The pervasive misrepresentations of the law in [defendant's] filings cannot be tolerated. . . . It causes an enormous waste of judicial resources to try to find cited cases that do not exist"]; *Garner v. Kadince, Inc.* (Utah Ct. App. 2025) 571 P.3d 812, 816 [sanctioning counsel for filing appellate briefs containing fabricated legal authority]; *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enterprises, LLC* (S.D. Fla., May 20, 2025, No. 17-cv-81140) 2025 WL 1440351, at *3 (*Versant*) [noting court's "inherent authority to sanction the misuse of AI when it affects the Court's docket, case disposition, and ruling"]; *Lacey v. State Farm General Insurance Co.* (C.D. Cal., May 5, 2025, No. CV 24-5205 FMO (MAAx)) 2025 WL 1363069, at *1, fn. omitted [sanctioning counsel for "submitt[ing] briefs to the Special Master that contained bogus AI-generated research"]; *Benjamin v. Costco Wholesale Corporation* (E.D.N.Y. 2025) 779 F.Supp.3d 341, 347 ["Across the country, courts have issued a panoply of sanctions against attorneys who submitted fake cases"]; *Kruse v. Karlen* (Mo. Ct. App. 2024) 692 S.W.3d 43, 52 ["Filing an appellate brief with bogus citations in this Court for any reason cannot be countenanced and represents a flagrant violation of the duties of candor Appellant owes to this Court"];

*Lee v. R&R Home Care, Inc.* (E.D. La., Aug. 28, 2025, No. CV 24-836) 2025 WL 2481375, at *4 [sanctioning counsel for filing a brief containing a fabricated quotation; "The submission of any false authority undermines the Court's confidence in counsel's work and forces the Court to expend significant resources addressing the misconduct"]; *In re Richburg, supra,* 2025 WL 2470473, at *1 [sanctioning counsel for filing a pleading citing "fake caselaw 'hallucinated' by AI"].)

We agree with the cases cited above that relying on fabricated legal authority is sanctionable. As a district judge recently held when presented with nonexistent precedent generated by ChatGPT: "A fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law. An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system." (*Mata v. Avianca, Inc.* (S.D.N.Y. 2023) 678 F.Supp.3d 443, 461, fn. omitted; see also *Park v. Kim* (2d Cir. 2024) 91 F.4th 610, 615 [quoting *Mata*].)

To state the obvious, it is a fundamental duty of attorneys to *read* the legal authorities they cite in appellate briefs or any other court filings to determine that the authorities stand for the propositions for which they are cited. Plainly, counsel did not read the cases he cited before filing his appellate briefs: Had he read them, he would have discovered, as we did, that the cases did not contain the language he purported to quote, did not support the propositions for which they were cited, or did not exist. (See *Benjamin v. Costco Wholesale Corporation, supra,* 779 F.Supp.3d at p. 343 ["an attorney who submits fake cases clearly has not *read* those nonexistent cases, which is a violation

of [the federal equivalent of § 128.7]"]; *Willis v. U.S. Bank National Association as Trustee, Igloo Series Trust* (N.D. Tex., May 15, 2025, No. 3:25-cv-516-BN) 2025 WL 1408897, at *2 [same].)  Counsel thus fundamentally abdicated his responsibility to the court and to his client.  (See *Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534, 559 [" 'It is critical to both the bench and the bar that we be able to rely on the honesty of counsel.  The term "officer of the court," with all the assumptions of honor and integrity that append to it, must not be allowed to lose its significance' "].)

Counsel acknowledges that his reliance on generative AI to prepare appellate briefs was "inexcusable," but he urges that he should not be sanctioned because he was not aware that AI can fabricate legal authority and did not intend to deceive the court.  Although we take counsel at his word—and although there is nothing inherently wrong with an attorney appropriately using AI in a law practice—before filing any court document, an attorney must "carefully check every case citation, fact, and argument to make sure that they are correct and proper.  Attorneys cannot delegate that role to AI, computers, robots, or any other form of technology.  Just as a competent attorney would very carefully check the veracity and accuracy of all case citations in any pleading, motion, response, reply, or other paper prepared by a law clerk, intern, or other attorney before it is filed, the same holds true when attorneys utilize AI or any other form of technology."  (See *Versant, supra*, 2025 WL 1440351, at *4.)

We note, moreover, that the problem of AI hallucinations has been discussed extensively in cases and the popular press for several years.  (See, e.g., Mulvaney, *Judge Sanctions Lawyers*

26

*Who Filed Fake ChatGPT Legal Research*, Wall. St. J. (June 22, 2023) <https://www.tinyurl.com/mup8cn6d> [as of Sept. 12, 2025], archived at <https://perma.cc/H3HG-VAQ7>; Weiser, *Here's What Happens When Your Lawyer Uses ChatGPT*, N.Y. Times (May 27, 2023) <https://tinyurl.com/yxhza24w> [as of Sept. 12, 2025], archived at <https://perma.cc/H355-YHGC>; *Schoene, supra*, 2025 WL 1755839, at *7 ["It is now well known that AI tools 'hallucinate' fake cases"]; *Powhatan, supra*, 2025 WL 1559593, at *9; *Hayes, supra*, 763 F.Supp.3d at p. 1065.) Thus, even a superficial review of the literature would have alerted counsel to this issue. Further, the State Bar of California released "Practical Guidance for the Use of Generative Artificial Intelligence in the Practice of Law" nearly two years ago, in November 2023. Citing specific California Rules of Professional Conduct, that guidance notes that generative AI outputs may "include information that is false, inaccurate, or biased," and thus a lawyer who uses these outputs as a "starting point" must "critically review, validate, and correct both the input and the output of generative AI" to, among other things, "detect[] and eliminat[e] . . . false AI-generated results." (<https://tinyurl.com/4p59uyup> [as of Sept. 12, 2025], archived at <https://perma.cc/KG9Q-7YQD>.)[7]

---

[7] Additionally, the notes to Rule 1.1 of the California Rules of Professional Conduct expressly provide that "[t]he duties set forth in this rule include the duty to keep abreast of the changes in the law and its practice, including the benefits and risks associated with relevant technology." (See Editors' Note 1, Cal. Rules Prof. Conduct, foll. rule 1.1.) We therefore do not agree that counsel's failure to educate himself about the limitations of

Counsel also asserts that sanctions are not appropriate because the brief's errors are "isolated" and "[t]he substantive legal authorities remain sound regardless of citation format irregularities." In other words, counsel suggests, his conduct is not sanctionable because *some* of his assertions are supported by accurate legal citations, and other assertions, although misattributed, find support in cases he did not cite. These contentions lack merit. Plainly, counsel's errors are not "isolated." As noted above, nearly *all* of the case quotations in appellant's opening brief and many more from appellant's reply brief are fabricated, and many of the cited cases do not stand for the propositions for which they are cited. These inaccuracies permeate plaintiff's opening and reply briefs. Moreover, "it is not this court's function to serve as [appellant's] backup appellate counsel." (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 546.) It is counsel's job—*not* this court's—to identify legal authority to support appellant's contentions. The existence of (uncited) cases in support of plaintiff's legal contentions does not excuse the fraudulent case cites.[8]

In short, we conclude that this appeal is frivolous because it "rest[s] on negligible legal foundation" (*Malek, supra,* 58 Cal.App.5th at pp. 834–835) and is peppered with fabricated legal citations. The appeal also unreasonably violates the Rules

---

the legal tools he relied on makes the imposition of sanctions inappropriate.

[8]    Nor is it correct that plaintiff's "substantive legal arguments [are] sound" notwithstanding the fabricated citations. To the contrary, as we have discussed, plaintiff's appellate contentions are wholly without merit.

of Court because it does not support each point with citations to real (as opposed to fabricated) legal authority.  (See Rule 8.204(a)(1)(B).)

### C. An award of sanctions is appropriate in this case.

Sanctions may be awarded to the respondent to compensate for the costs of responding to a frivolous appeal, or to the clerk of the court for conduct that unnecessarily burdens the court and the taxpayers.  As one court has explained, " 'Respondent[s] . . . are not the only parties damaged when an appellant pursues a frivolous claim.  Other appellate parties, many of whom wait years for a resolution of bona fide disputes, are prejudiced by the useless diversion of this court's attention.  [Citation.]  In the same vein, the appellate system and the taxpayers of this state are damaged by what amounts to a waste of this court's time and resources.  [Citations.]  Accordingly, an appropriate measure of sanctions should also compensate the government for its expense in processing, reviewing and deciding a frivolous appeal.' (*Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 17.)"  (*Kleveland v. Siegel & Wolensky, LLP*, *supra*, 215 Cal.App.4th at p. 559; see also *Huschke v. Slater*, *supra*, 168 Cal.App.4th at p. 1161 [quoting *Finnie*]; accord *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 189–190; *In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 519–520.)

Attorney Mostafavi's fabricated citations and erroneous statements of law have required this court to spend excessive time on this otherwise straightforward appeal to attempt to track down fabricated legal authority and then to research the issues presented without plaintiff's assistance.  We therefore conclude that an award of sanctions payable to the court is appropriate.

In 2013, another appellate court noted that appellate sanctions for frivolous appeals recently had ranged from $6,000 to $12,500, "generally, but not exclusively, based on the estimated cost to the court of processing a frivolous appeal." (*Kleveland*, *supra*, 215 Cal.App.4th at p. 560, citing *Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 294.) The costs of processing a frivolous appeal have undoubtedly increased in the intervening 12 years. Nonetheless, because counsel has represented that his conduct was unintentional, and because he has expressed remorse for his actions, we impose a conservative sanction of $10,000. Such sanction shall be payable to the clerk of this court within 30 days of the filing of the remittitur. (See *Workman v. Colichman* (2019) 33 Cal.App.5th 1039, 1064–1065 [imposing sanctions of $8,500]; *Kim*, at p. 294 [imposing sanction of $10,000]; *DeRose v. Heurlin* (2002) 100 Cal.App.4th 158, 182 [imposing sanction of $6,000].)[9] We also direct counsel to serve a copy of this opinion on his client, and direct the clerk of the court to serve a copy of this opinion on the State Bar.

We decline to order sanctions payable to opposing counsel. While we have no doubt that such sanctions would be appropriate in some cases, in the present case respondents did not alert the court to the fabricated citations and appear to have become aware of the issue only when the court issued its order to show cause. Further, although respondents have requested that appellant be ordered to pay "all [respondents'] attorney's fees and

---

[9]     This opinion constitutes a written statement of our reasons for imposing sanctions. (*Workman v. Colichman*, *supra*, 33 Cal.App.5th at p. 1065; *In re Marriage of Flaherty*, *supra*, 31 Cal.3d at p. 654.)

costs incurred in connection with this appeal," they have not submitted a declaration attesting to what those fees and costs are.

We conclude by noting that "hallucination" is a particularly apt word to describe the darker consequences of AI. AI hallucinates facts and law to an attorney, who takes them as real and repeats them to a court. This court detected (and rejected) these particular hallucinations. But there are many instances—hopefully not in a judicial setting—where hallucinations are circulated, believed, and become "fact" and "law" in some minds. We all must guard against those instances. As a federal district court recently noted: "There is no room in our court system for the submission of fake, hallucinated case citations, facts, or law. And it is entirely preventable by competent counsel who do their jobs properly and competently." (*Versant*, *supra*, 2025 WL 1440351, at *7.)

## DISPOSITION

The judgment is affirmed. Attorney Amir Mostafavi is directed to pay $10,000 in sanctions, payable to the clerk of this court, no later than 30 days after the remittitur is filed. The clerk is directed to deposit this sum into the court's general fund.

Pursuant to Business and Professions Code section 6086.7, subdivision (a)(3), the clerk of the court is ordered to forward a copy of this opinion to the State Bar upon return of the remittitur. Mostafavi is ordered, within 15 days of the issuance of the remittitur, to provide a copy of this opinion to his client and to file a certification in this court that he has done so.

Respondents are awarded their appellate costs.

**CERTIFIED FOR PUBLICATION**


                                        EDMON, P. J.


We concur:



EGERTON, J.                    KLATCHKO, J.*

---

\*       Judge of the Superior Court of Riverside County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.